## HINSDELL and PITCHER vs. WEED.

Where the owner of a canal boat contracted to carry property from Buffalo to Albany, and in the course of the trip, and after he had lost a part of the property, sold his boat, the remainder of the cargo being on board, to another person, who received the bill of lading and an order from the shippers of the cargo, on the consignees, for the amount due for freight, and then performed the remainder of the trip and delivered the bill of lading with the residue of the property to the consignee; *held* that the purchaser stood in the place of the former owner of the boat in respect to the claim for freight, and could only recover where such former owner could recover.

The owners of a vessel or boat, can recover on an implied assumpsit against the consignee named in the bill of lading, on his receiving the property shipped.

And if a part of the property be lost in the course of the voyage, yet if the consignee accept the residue, he becomes liable to pay freight *pro rata*.

But the consignee may recoup the damages on account of the property not delivered, in the action against him for the freight. *Per* McKissock, J.

But if the directions of the consignors to the consignee, as contained in, or annexed to, the bill of lading, be to pay freight only on the delivery of *all* the property shipped, the delivery of the whole will be a condition precedent to the recovery of freight against the consignee, though he accept and receive a part. *Per* Whittlesey, J.

Motion to set aside the report of a referee. The action was assumpsit, in which the plaintiffs, as boat owners and carriers by the Erie canal, sought to recover of the defendant the bal-

Hinsdell *v.* Weed.

ance of freight on a quantity of flour carried from Buffalo, and consigned and delivered to the defendant at Albany. The facts proved were the following: On the 10th day of October, 1844, Wilkins, Marsh & Co. of Buffalo, shipped on board the canal boat Lumberman, G. Viele, master, which boat was then owned by O. B. Brackett, 543 barrels of flour. By the bill of lading signed by the shippers, it appeared that the flour was consigned to the "care of E. Weed, Albany, [the defendant,] for John Thomas." W. M. & Co. advanced the toll at Buffalo, which left $83 of the gross freight unpaid. At the foot of the bill of lading, there was an order signed by Wilkins, Marsh & Co. as follows:

"On safe delivery of all above flour, E. Weed will please collect of John Thomas fr't. and charges, and pay eighty-two $\frac{44}{100}$ dollars to O. B. Brackett or order."

The boat arrived at Syracuse on her trip to Albany, about the 16th of October following, when she was sold or assigned by Brackett to the plaintiffs, who took possession of and put their own hands upon her, and after a little delay sent her forward on her trip to Albany. Before doing so, the plaintiffs wrote to Wilkins, Marsh & Co. stating the purchase of the boat by them, and that they could not deliver the flour on account of Brackett, but if W. M. & Co. would send them an order to collect the balance of freight on delivery of the flour, they said they would forward it. In consequence of this, W. M. & Co., on the 18th of October, wrote to the defendant, directing him to pay to the plaintiffs the balance of freight which he was by the bill of lading to have paid to Brackett, on the delivery of the bill of lading. They advised the plaintiffs of this, and desired them to procure an order for the freight from Brackett's assignee. On the arrival of the boat at Albany, the flour was delivered to the defendant, except nineteen barrels which were missing. The evidence rendered it nearly certain that this was taken off between Buffalo and Syracuse, and before the boat come into the possession of the plaintiffs. The bill of lading was delivered to the defendant and the balance of freight

demanded of him, but he refused to pay it, unless the plaintiffs would deduct the value of the missing flour, which they refused to do. The referee reported in favor of the plaintiffs for the balance of freight as above stated, deducting the proportion of freight on the nineteen barrels of flour not delivered.

*L. Benedict, Jun.* for the defendant, moved to set aside the report. He insisted that the plaintiffs stood in the same situation which Brackett occupied, and could only recover where he could have recovered; that the flour was shipped under a special contract, which made the delivery of all the flour a condition to the payment of freight, and also that the freight was payable out of a particular fund. At all events the defendant was entitled to recoup for the value of the lost flour.

*Forbes & Shelden,* for the plaintiffs, said that the plaintiffs were entitled to recover against the defendant as consignee upon the implied contract arising out of his receipt of the flour in that character, for the freight of all the flour actually delivered. That the defendant was not entitled to be allowed for the flour which was deficient, as there was no privity of contract as to that between the consignee and the carriers. If the plaintiffs were liable for that flour, it was to Wilkins & Marsh, who, and not the defendant, were the parties to the contract of shipment.

McKissock, J. I shall first examine this case as if the action were brought by O. B. Brackett, the original carrier and owner of the boat. The bill of lading virtually directed the delivery of the flour to the consignee, he paying the freight; for though there was no such condition in the body of the bill, the order of the shippers at the bottom, on the defendant, who was the consignee, to collect and pay the freight, gave it that character. The consignee, therefore, on the receipt of the property, became liable to pay the freight by implication of law. (3 *Kent,* 221, 3d ed.; *Abbott on Shipping, by Story,* 284, § 4.) This doctrine is carried so far as to raise an implied contract to

pay against the assignee of the consignee. (*Cock* v. *Taylor*, 13 *East*, 399; *Dugal* v. *Kembell*, 3 *Bing*. 383.) (*a.*)

It is however argued, on the part of the defendant, that the promise, if any, was to pay from a particular fund, and that fund having failed the obligation to pay ceased. But the obligation to pay did not depend upon the existence or adequacy of the fund. The reference to John Thomas merely indicated the source from which the consignee was to reimburse the money advanced. And if the whole flour had been delivered, there can be no doubt but the consignee would have been bound to pay the whole freight; though Thomas, of whom he was directed to get the money, had totally failed or refused to pay him. Again, it is said that the delivery of the whole flour is a condition precedent to the right to demand the freight, and as there was a deficiency of nineteen barrels that there was nothing due. The words in the order at the foot of the bill of lading are " on delivery of *all* the above flour, E. Weed will please to collect of John Thomas freight and charges, and pay eighty-two $\frac{44}{100}$ to O. B. Brackett or order." Now I consider that the word " all" does not in any degree alter the meaning, and that the interpretation is to be the same as if it had read " on safe delivery of the above flour." The legal purport of the order is— on acceptance of the whole you will pay $82,44, and on receipt and acceptance of part you will pay less in proportion. In the case of a general ship, freight to be according to the quantity of the goods, it is payable on what is delivered. (*Abbott on Ship. by Story*, 300, § 9; 3 *Kent*, 227, 3d ed.) So also where the charter was to carry a full freight and the ship brought but half a cargo. (*Ritchee* v. *Atkinson*, 10 *East*, 295.) Even the acceptance and the receipt of any value binds the acceptor to pay the whole freight though the goods may have been greatly damaged. (*Shields* v. *Davis*, 6 *Taunt*. 65; *Cook* v. *Jennings*, 7 *T. R.* 381, *per Lawrence, J.*) Besides, in cases of vessels chartered for a particular sum, though there can be no recovery on the charter party without performance still on vol-

(*a*) See also *Merian* v. *Funck*, (4 *Denio*, 110.)

untary acceptance of part performance freight is recoverable
pro rata. (*Post* v. *Robertson*, 1 *John*. 24, 27; *Welch* v. *Hicks*,
6 *Cowen*, 504.)

In the present case, the flour was received by the defendant
without a word of objection on account of the deficiency, till
demand is made of the freight; and then the refusal is not put
upon the ground that no freight was due because of the non-
delivery of the whole flour, but on the claim set up of a right
to have the value of the lost flour applied in the adjustment of
the freight. The result is, that the defendant having volunta-
rily accepted a portion of the property was bound for the freight
*pro rata*.

Keeping in mind that we are still looking at the matter as
though the original carrier were the plaintiff, let us inquire
whether the defendant should have been permitted to recoup
his damages for the loss of the flour against the freight. The
plaintiff claims compensation for his services. To this the de-
fendant replies, you have failed in the performance of your
part of the contract, by which I have sustained loss. Deduct
that and you shall forthwith have the balance, if any. This
proposal of the defendant is according to the plainest dictates
of reason and equity, and conformable to the law applicable to
similar cases. The claims of both parties should be adjusted
in one action. (*Reab* v. *McAllister*, 8 *Wend*. 109; *Batter-
man* v. *Price*, 3 *Hill*, 171.) It has been said that the defen-
dant has no interest in the damages for not delivering the flour,
and therefore cannot set them up against the claim for freight.
This can only be on the assumption that he is a mere agent to
receive the property. This proves too much, for if it be true,
then there is no implied promise to pay the freight arising out
of the fact of receiving the flour. The answer, however, is not
well founded, for the defendant as the consignee of the flour
became bound to pay the freight, and had a right to bring
against it the damages occasioned by the breach of the con-
tract of the carrier.

But it is contended that whatever might have been the law
between Brackett, the original owner of the boat, and the de-

Hinsdell *v.* Weed.

fendant, the plaintiffs are not answerable for the lost flour, as it never came to their possession. This position rests on the assumption that their agreement was simply to carry the flour that was on board the boat at Syracuse from that place to Albany for a specific freight, and that this was an original contract entirely independent of, and disconnected with, the one with Brackett under which the flour was shipped. But this is by no means correct. The plaintiffs took possession of the boat and cargo at Syracuse, and having thus deprived Brackett of the means of fulfilling his engagement, they propose to the shippers, not to carry the cargo to Albany if they would pay to them a freight, but according to the very nature of the case declare " we cannot deliver this load on account of O. B. Brackett. If you will give us an order to collect the freight on delivery in Albany we will forward the flour with all reasonable despatch." This they say with the bill of lading in their hands, showing that Brackett had already received all the freight but $82,44. This proposal the shippers accept, sending at the same time an order on the defendant, stating the circumstances and saying to the defendant " we wish you therefore to pay to the order of the plaintiffs the balance of the freight to be paid on the delivery of said flour with the original bill of lading." It will be perceived at once that there is no possibility of separating the undertaking of the plaintiffs from the whole of the obligations of Brackett. They were substituted in his place, and were to have their compensation when they should have performed his original engagement. It follows either that the delivery of the whole flour was a condition precedent, or that the claim for compensation should be subject to a deduction to the amount of the damages for non-fulfilment, without respect to the question whether the part missing was lost before or after the plaintiffs took charge of the boat and cargo. Having already shown that the recoupment of these damages would have been the proper mode of adjusting the matter in a suit for the freight by the original carrier, it should have been allowed in the present case. I am of opinion, therefore, that the report of the referee should be set aside.

WHITTLESEY, J.   The usual bill of lading accompanying goods sent by ship directs that the goods shall be delivered to A. B. or his assigns, he or they paying freight for the same at a specified rate, according to the bill of lading.   Under such a document it is held that the person receiving the goods, whether the consignee or his assigns, shall, if he accept the same, be liable in assumpsit for the freight.   (*Cock* v. *Taylor*, 13 *East*, 399; 3 *Bing*. 383; *Story on Bailment*, § 589; *Abbott on Shipping*, 285.)   The party so receiving the goods is held liable because it is provided in the bill of lading that he shall pay freight whether he be the consignee himself or the assignee of the consignee.

The bill of lading in this case is not precisely in that form. The contract for the freight seems to have been made by the consignors or shippers.   They advanced the greater amount to the owner of the boat, leaving only a small balance due to the carrier.   For the payment of this balance they drew upon the defendant at the foot of the bill of lading, requesting him, upon the *delivery of all the flour*, to collect of another person, and pay to the carrier, the balance which would be due for the freight.   This bill of lading with this order came to the possession of the plaintiffs.   They could perceive at once by it the nature of the contract; and they were willing to continue the voyage which had been begun, if this balance could, at the end of the voyage, be paid to them instead of the former owner of the boat.   They wrote to the consignors expressing their willingness so to do, who in return in effect accept their proposition and give them an order upon the defendant in substantially the same terms as that they had previously given in favor of the former owner of the boat.   The defendant was directed to collect and pay upon the safe delivery of *all* the flour.   It seems to me apparent from the bill of lading that the defendant was but a mere agent to perform the directions of the consignors.   It seems to me also that the plaintiffs should have understood that he acted in this capacity alone.   What then was the defendant's duty?   He was directed to pay the balance of freight upon delivery of *all* the flour.   This had not all

Hinsdell *v.* Weed.

been delivered, and he could not therefore, in pursuance of the directions, pay the freight. Is he then therefore liable to the plaintiffs in this action because he accepted the flour? It seems to me that this is different from the common case which makes the consignee liable, because the bill of lading requires him to pay. In this case, the original owner of the boat made, it is evident, a contract with the consignors for the transportation of the flour. As a mode of payment of part of the freight they drew upon the defendant to pay, upon a certain contingency, to wit, the delivery of all the flour. The defendant could not honor the draft unless the contingency had happened, to wit, the delivery of all the flour. It would be at the master's option to retain the flour by virtue of his lien as carrier, or to deliver it and look to the consignors for payment, because their draft upon the defendant had not been honored. But I cannot perceive any assumpsit, express or implied, to pay this freight unless the whole flour is delivered.

The plaintiffs made a new contract of precisely the same character with the consignors, whom they also treated as the owners of the flour, contracting for its transportation. The result to the plaintiffs must be the same. They must either detain the flour for the freight, or, having delivered it, look to the consignors. The consignors in such case are liable. (*Barker* v. *Havens*, 17 *John. R.* 234.) As the flour was lost before this new or second bargain was made, it is probable that as between the plaintiffs and the consignors the latter must sustain the loss. But that question is to be settled between those parties, and not with this defendant. I do not consider him liable in this action to the plaintiffs, and for that reason I think the report of the referee should be set aside.

Report set aside.