## DAVID OGDEN and others *v.* THOMAS B. CODDINGTON.

Where a defendant has a cause of action, which, under the former law, he could only use by way of recoupment, to defeat the plaintiff's recovery, without himself recovering any balance, or, at his election, bring a cross-action; he may now, under §§ 150 and 274 of the Code, claim in his answer, and recover, a balance over against the plaintiff, as "the affirmative relief to which he is entitled."

A mere consignee, having no interest in the goods consigned, cannot maintain an action against the ship owners for an injury to the goods on the voyage, arising from negligence or misconduct in the transaction. Such action must be brought by the owner of the goods.

Where goods are delivered to the carrier, on behalf of the consignee, and are placed at his sole disposal, he will, as matter of *evidence*, be presumed to be the owner.

And in an action for freight, where the defendant sets up a claim for damages, to recover a balance over against the plaintiffs for an injury to the goods, and the parties go to trial, under a state of the pleadings consistent with the defendant's ownership, and indicating an intent to submit the whole question of the plaintiff's liability and its extent to the jury, and no objection is raised or point taken on the trial, questioning the defendant's right to recover over to the extent of the injury proved, if any, the plaintiffs will be concluded by the construction they have given to the pleadings, and their voluntary submission of the question to the jury.

Where, upon the refusal, at special term, of an application for a new trial, the party deeming himself aggrieved appeals from the judgment in the cause, and not from the order denying a new trial; he will be regarded as having acquiesced in the decision *of the motion*, so far as such motion is addressed to the discretion of the court.

ACTION for freight, upon a shipment of sheet iron. The complaint alleged, that the defendant shipped certain merchandise from Liverpool to New York, in a vessel owned by the plaintiffs, and agreed to pay the freight, which, upon the arrival and delivery of the merchandise to the defendant, was demanded; that the freight amounted to $360, and remained due and unpaid by the defendant.

The answer denied that the defendant shipped any merchandise, as in the complaint alleged, but admitted and averred, "by way of counter-claim," that a quantity of

sheet iron, being the same referred to in the complaint, was shipped at the time and in the ship also therein mentioned; that when so shipped, the same was in good condition; that the owners of the ship undertook, in their bills of lading, to deliver the iron to the defendant in like good order, the dangers of the seas and of navigation of every kind excepted; but that, when delivered, the goods were found to have been damaged; that their bad condition was not caused, to a great extent, if at all, by the matters excepted in the bills of lading; and that the defendant had a valid claim to the amount of such damages, namely, $1,500, or the balance thereof, after deducting the freight to which the plaintiff might be entitled.

The reply simply put in issue the material allgations of the answer. The pleadings were all verified.

On the trial, before INGRAHAM, FIRST J., and a jury, the parties appeared by their respective counsel, James Thomson and S. P. Nash. The plaintiff read the following stipulation, entitled in the cause and mutually signed by the attorneys of record:

" It is hereby stipulated, that upon the trial of this cause the plaintiffs may claim against the defendant, as consignee of the goods mentioned in the complaint, as admitted in the answer, although charged as owner in the complaint, without amending the complaint, and that the freight on the goods delivered to the defendant as in the complaint alleged, amounted to $360, as alleged in the complaint, and that said goods were delivered to the defendant at the time stated in the complaint. " It is also hereby admitted by the defendant that the plaintiffs are the owner of the ship ' Racer.' "

The defendant then opened his case, and introduced testimony to sustain the allegations of his answer in respect to the damaged condition of the iron upon its delivery. Evidence was also adduced in behalf of the plaintiffs, and there was an extended examination of witnesses for both parties, upon the question, whether the damage which the iron had suffered was the result of causes within the exception of the

bills of lading, or was occasioned by the ordinary dampness of the ship's hold.

The defendant's counsel, without objection, presented to the jury an estimate of the damage, calculated by per centage and by the pound. A verdict was rendered in the defendant's favor for $1,000.

The plaintiffs moved for a new trial on the grounds, principally, that a counter-claim, within the meaning of the Code, was in the nature of a recoupment of damages; that the defendant, if entitled to a verdict at all, could have a mere extinguishment of the plaintiffs' claim, and not an affirmative recovery; and that the defendant must be deemed, on the pleadings and case, a mere consignee, and not entitled to damages for a breach of the contract contained in the bill of lading.

The motion for a new trial having been denied, the plaintiffs appealed from the judgment to the general term.

*James Thomson* and *Augustus F. Smith,* for the plaintiffs.

I. An action on the bill of lading can be brought only by the owner of the goods, or by the person with whom the contract is made. (Angell & Ames on Carriers, §§ 499, 500; also § 498; *Coates* v. *Chaplain,* 3 Ad. & E. N. R. N. S. 483.) 1. There is here no proof of ownership at the time of the shipment. 2. The answer denies that the defendant shipped the goods. 3. The contract by the bill of lading was with the shipper. 4. We are still liable to the owner of the iron for the damage. There was nothing in the charge to which an exception could be taken—nothing in the evidence objectionable. The jury erred. They were not entitled to give the verdict they did on the evidence.

II. When damages are recouped, the defendant is only entitled to so much as will exhaust the claim of the plaintiff, and is not entitled to have any thing certified in his favor. (*Batterman* v. *Pierce,* 3 Hill, 171.)

III. Section 150 does not make any change in the law to

affect this case. Subdi. 1 enacts a rule already established. It is recoupment. Subdi. 2 allows the defendant to set off unliquidated damages.

IV. Statutes are to be construed with reference to the principles of the common law, and will not be held to alter it further than is absolutely required. (Dwarris on Statutes, 695, 7 Law Lib. N. S.)

V. The verdict should have been for the defendant simply.

*Stephen P. Nash*, for the defendant.

I. The action by the plaintiffs was to recover freight; the defendant set up a counter-claim for damages caused to the cargo on the voyage of importation. The plaintiffs' claim was conceded and allowed by the jury. The defendant proved damages by several witnesses, varying from $1,942 27 to $2,471 11, and the plaintiffs gave no evidence the other way. Defendant allowed the freight and interest, $376 80, and also conceded to the plaintiffs, without proof on their part, $504 70, refunded as abatement of duties on the damaged iron, and the verdict was less than the balance due the defendant according to the lowest estimate. The plaintiffs, therefore, cannot complain that it is excessive.

II. The only point contended for by the plaintiffs on the trial was, that the damage was caused by the natural dampness of the ship's hold. On this question, the weight of evidence was with the defendant; at any rate, the point was fairly left with the jury.

III. There was no point made at the trial as to the defendant's ownership of the goods. It was throughout assumed that he was the owner, and had proof of the fact been required, it could easily have been given. (*Holbrook* v. *Wight*, 24 Wend. 169; *Mann* v. *Eckford's Ex'rs*, 15 Wend. 502, 511; *Hinsdale* v. *Wood*, 5 Denio, 172.) But as a consignee, named in the bill of lading, he is *prima facie* owner, and it was for the plaintiffs to show that he was not the owner. (*Price* v. *Powell*, 3 Comst. 322; see, also, *Holbrook*

v. *Wight*, 24 Wend. 169.) Besides, the answer alleges an express contract to deliver *to the defendant* in good order and condition. This allegation being contained in the new matter set up as a counter-claim, and not denied in the reply, is to be taken as admitted. (Code, § 168.)

IV. The defendant's cause of action was a proper subject of counter-claim, and entitles him, under the present provisions of the Code, to an affirmative judgment in his favor. (§§ 150, 274.)

V. There was no error in the rulings of the court, nor in the charge. (*Ewart* v. *Street*, 2 Bailey So. Car. 517; 3 Story C. C. Rep. 349; *Clark* v. *Barnwell*, 12 Howard U. S. 272; *Price* v. *Powell*, 3 Comst. 322.) And even if there were error, no exception was taken.

INGRAHAM, FIRST J.—This case was tried before me, with the consent of both parties that all the claims for freight and damage to the iron, as set up in the pleadings, should be disposed of in this action. For this purpose, evidence was received from both sides as to the extent of damage sustained, without objection. Both counsel argued this question before the jury, and the jury were instructed by me as to the rule of damage, in case they found such injury to have been caused while the iron was in possession of the carrier. These facts do not appear on the case, but no objection was taken to the evidence, nor is there any thing which shows that the plaintiffs at any time objected to the defendant's claim in this respect.

It was for these reasons that I denied the motion at special term. Where counsel try a cause upon the merits, waiving all technical objections between the parties, with a view to settle all matters in controversy between them, relative to the subject matter of the action, I still think it too late for the losing party to ask for a new trial, on the ground that he was mistaken in submitting the question to the jury. Good faith seems to require that such a mode of getting rid of an adverse verdict should not be resorted to. I was aware of

the objection now taken on the trial; but as the parties did not make the objection in any stage of the trial, I considered it as waived by mutual agreement, and so left the case to the jury.

Upon the merits, also, I think there is no necessity for interfering with this verdict.

Without referring to the pleadings, it is clear that there is nothing in the evidence that destroys the presumption that the consignee is the owner of the goods. Certainly, when the plaintiff has tried the case on that presumption, the court is not required to be very astute to look out an imaginary reason by which to get rid of the virtual admission, which such a course of trying the cause warrants the jury in assuming.

Now, upon what ground is it sought to reverse the judgment? Because the defendant has denied an allegation in the complaint that the defendant shipped the goods. He does not deny the liability for freight, because he was not the owner. There is no allegation of ownership. The denial of having shipped the goods at Liverpool is no denial of being the owner of the goods on their arrival at this port, or even at the time of the shipment. The defendant did not ship the goods, and if ordered for his account, the same denial would have been consistent with the truth. If he had ordered the goods on *his* own account, he cannot, with propriety, be said to have shipped the goods at Liverpool. His title to the property, if owner under such circumstances, would not be complete until after the property was delivered on board the vessel. The fair import of the transaction might well be, that the goods were shipped by others for his use, and the presumption still continue that he was the owner of the goods thereafter. I cannot adopt the conclusion that this denial in the answer of the plaintiffs' allegation as to the shipment, is conclusive upon the defendant to show that he did not own the goods on their arrival here. I may view this case more strongly in favor of the defendant than my brethren, because I cannot relieve my mind from the know-

Ogden *v.* Coddington.

ledge of the fact, that throughout the whole trial of the cause, both parties openly avowed their desire to settle the whole controversy about the iron in this one action, and after this has been done, I cannot see the propriety of resorting to such means to get rid of the verdict.

But if my brethren should differ from me in this view of the subject, there can be no propriety in ordering a new trial.

The question as to the defendant's liability for the freight has been fully and fairly tried; and to the finding, thus far, in favor of the defendant, the plaintiffs have urged no valid objection.   If the objection is sustained at all, the order merely should be to reverse so much of the judgment as entitles the defendant to recover any damages, and leaving the verdict to stand for the defendant.   I am of the opinion that the judgment should be affirmed.

DALY, J., concurred in affirming the judgment.

WOODRUFF, J.—Upon going to trial in this action, the parties stipulated, that without any formal amendment of the complaint, the plaintiffs might proceed herein against the defendant, not as owner of the goods in question, but as the mere consignee thereof, in conformity with the allegations made by him in that behalf in his answer.   The incorporation of this stipulation in the record, was a virtual amendment by mutual consent, and under this modification of the pleadings the case stands thus:

The plaintiffs aver, that the goods were shipped in Liverpool, to be delivered in New York to the defendant, as consignee, upon the payment, by him, of the freight; and that the goods were delivered to the defendant; that he has not paid the freight, and the plaintiffs claim to recover the amount thereof, $360.

The defendant expressly denies that he shipped the goods, but admits that the goods were shipped at Liverpool, consigned and delivered to him, and sets up as a defence, " by

way of counter-claim," that the plaintiffs, by the terms of the shipment, undertook and were bound to deliver the goods in good order and condition, but that the goods, when delivered to him, were in a bad and damaged condition, and he claims damages to the extent of $1,500, or for the balance thereof, after deducting the freight.

The replication, in substance, denies that the goods were damaged through the plaintiffs' fault, and denies that the defendant is entitled to judgment for any amount whatever.

A verdict was had on the trial in favor of the defendant for $1,000.

It was not claimed on the trial, nor is it claimed on this appeal, that the defendant, although a mere consignee, might not, by proving that the goods were damaged, defeat the plaintiffs' recovery of the freight claimed. (*Vide Hinsdale* v. *Weed,* 5 Denio, 172; *Edwards* v. *Todd,* 1 Scam. 463; *Leech* v. *Baldwin,* 5 Watts, 446; *Humphrey* v. *Reed,* 6 Wharton, 453; *Manning* v. *Watson,* Cheves, 60.)

Nor does it appear, by the case, that any question was raised on the trial respecting the defendant's right to go further, and recover, by way of counter-claim, for all the damages which the goods sustained, and have a verdict and judgment therefor in his own favor. No instruction on this precise point was given by the judge to the jury, and none appears to have been desired by the counsel for either party. It is true, that the charge contained the direction that, if the damages were not caused by the damp of the ship's hold, (there being no other cause of damage shown, and the actual damage being plainly proven,) the defendant was entitled to a verdict. Here the charge stopped, and no direction was given or asked for by counsel on either side, on the question whether the jury might or might not go beyond a mere verdict for the defendant and add a finding in his favor. But the whole case taken together, *i. e.*, the issues between the parties, the claim to a verdict for a balance, distinctly made by the defendant in the answer, the evidence, the statements of the amount and balance claimed by the defendant, which were submitted

Ogden v. Coddington.

without objection on the trial, with the charge and the ver-
dict thereupon, very clearly indicate that both parties intend-
ed to submit the whole question to the jury, upon the con-
cession that if the damage to the goods was sufficiently es-
tablished, such a verdict ought to be rendered as was in fact
rendered.

Upon this view of what transpired at the trial, a motion
for a new trial was denied at special term, and, as appears
by the opinion there given, the denial was for the single
reason that it is now too late for the plaintiffs to ask a new
trial, on the ground that the defendant was at most entitled
to defeat the plaintiffs' recovery, and could not have an af-
firmative verdict for damages in his own favor. So far as
a motion for a new trial is addressed to the discretion of the
court, the decision at the special term must be regarded as
acquiesced in, since no appeal was taken from the order there
made upon the motion.

The plaintiffs now appeal from the judgment, and insist
that, as matter of law, the verdict and judgment thereupon
are wrong; that upon the pleadings the defendant could
not be entitled to recover any thing from the plain-
tiffs, and that the matter of defence, however fully proved,
entitled him to defeat the plaintiffs' recovery, and no
more.

And the plaintiffs here insist, that the claim of the de-
fendant, urged as a " counter-claim," in conformity with the
vocabulary of the Code, is what was theretofore known as a
claim by way of recoupment, and that recoupment could
only be permitted to the extent of the claim established by
the plaintiffs.

It is not denied that such was the rule before the enactment
of the Code of Procedure, and is still, unless a new rule has
been introduced. (*Batterman* v. *Pierce*, 3 Hill, 171.)

Assuming, then, for the purposes of this branch of the inqui-
ry, that the defendant could have maintained a separate action
and recovered the whole amount of the damages set up as a
defence here, does the Code of Procedure now warrant a

judgment in his favor for the balance over the claim established by the plaintiffs ; *i. e.*, is a defendant now compelled to elect whether he will recoup his damages or bring a cross action ?

I think not. The reason for the rule no longer exists. Before the Code, unliquidated damages could not be *set off*, and it was only in case of a *set off* exceeding the claim of the plaintiff that the defendant could have judgment against the plaintiff for any balance ; and this was by an express statute, which confined such judgment to cases of *set off*.

Now, by § 150, an affirmative cause of action, whether the damages are liquidated or unliquidated, if it arise upon contract, and whether it was or was not a matter which might have been the subject of recoupment, may be urged as a defence to an action on contract ; and by § 274 the court may grant the defendant any affirmative relief to which he may be entitled.

To my mind it seems plainly to have been intended, that where a plaintiff has a claim for services or the like, and the defendant has a claim for damages for negligence in the performance of those services, their two claims might be disposed of in *one action*, so as to give to each party the full measure of his rights. Confessedly, in such case, the plaintiff is " entitled " to be allowed the full value of his services, and the defendant is " entitled " to the full amount of the damages he has sustained by the plaintiff's negligence. In every just sense, then, the defendant, if the amount of damages exceed the value of the plaintiff's services, ought to recover the balance. That is the " affirmative relief to which he is entitled," in the language of the 274th section.

Before the Code, there could be no recovery over by the defendant against the plaintiff, and therefore the only use which he could make of his claim was, either simply to defeat the plaintiff's recovery or else make it the subject of a cross action. Now the legislature have, I think, rendered a cross action wholly unnecessary, by giving the court power to render an affirmative judgment in his favor. This

is in accordance with the beneficial purposes of the Code; it relieves against merely technical objections; it avoids needless litigation, by protecting both parties to the *full extent* of their rights; it requires no compulsory election of the defendant, because, upon all the facts proved, it gives him all to which, upon those facts, he would have been entitled in a separate suit.

But the objection remains, that in the present case the defendant, being a mere consignee of the goods, could not have maintained a cross action against these plaintiffs for the injury to the goods in question, and *therefore*, although he might show such injury to defeat the claim for freight, he can go no further. That his right to resist the payment of freight proceeds not upon the ground that *he* is entitled to the damages resulting from the plaintiffs' negligence, but that *they* have not so performed their contract as to be entitled to freight; and that although, by accepting the goods, he became impliedly bound for the freight, yet the payment of freight by a mere consignee is nevertheless for the account of the owner of the goods; and it would be unjust to require such payment, when the plaintiffs have been shown to have failed in the performance on their part, and when, in a proper action by the owner, to recover for a breach of the contract of affreightment, the freight might be allowed in abatement of damages.

I think the plaintiffs are right in saying, that a mere consignee cannot maintain an action for the negligence of the carrier, or the breach of the carrier's contract. Such right of action belongs to the owner of the goods. The contract of the carrier, as evidenced by the bill of lading, is made with the shipper. If the shipper is owner, or has a special property in the goods, he may sue thereon. If the consignee is owner, then the shipper is regarded as his agent, and the contract being made for the owner's benefit, he may sue thereon, in virtue of his property in the goods and his exclusive beneficial interest in the contract. That is to say, the carriers are liable for a violation of the bill of lading to

him who employed them to carry—the shipper, if he have no interest in the goods, being regarded as the agent of the owner in such employment. What circumstances constitute such an intent in the consignor as would entitle him to sue on the express contract, it is not necessary to say. In some cases it has been held that the contract, being express with the shipper, he might, where he agreed to pay the freight, have the action on the express contract. (See *Davis* v. *James*, 5 Burr. 2,684; *Moore* v. *Wilson*, 1 D. & E. 659; *Joseph* v. *Knox*, 3 Camp. 320. But see *Dawes* v. *Peck*, 8 D. & E. 330; *King* v. *Meredith*, 2 Camp. 639.) But such shipment belongs to that class of cases in which contracts made by agents enure to the benefit of their principal, though made in the agent's name, which are numerous and familiar; and the condition of a mere consignee is that of a person with whom the contract is not made, and who in no sense employed the carriers, and who has no beneficial interest in the goods. The contract can, therefore, neither be said to be made with him nor for his benefit; and the rule is general, that no one can sue upon a contract but he with whom it was made, or he on whose behalf or for whose benefit it was made.

The liability of the consignee for the freight, which at first view might seem to indicate that he was deemed a party to the contract, is not inconsistent with these conclusions. That liability is not at all in virtue of the bill of lading or contract of affreightment; it is in virtue of his *acceptance* of the goods. It does not arise upon the contract, but is implied, and only implied, from the delivery and acceptance. He is not bound to accept the goods; and if he do not, he is not liable for freight in any case. He is neither bound to perform the contract of affreightment on his part, nor can he (in his own right) claim its performance on the other.

Without entering upon any review of the adjudged cases, it will suffice to say, that these views are, I think, fully sustained by *Snee* v. *Prescott*, 1 Atk. 245, 248, A. D. 1743; *Dawes* v. *Peck*, 8 D. & E. 330, A. D. 1799. (*Vide* opinion

of Lord Alvanley, that the proposition is as well settled as any in the law, that the owner *alone* can bring the action. *Dutton* v. *Solomonson*, 3 Bos. & Pull. 584, A. D. 1803; *Freeman* v. *Birch*, 1 Nev. & Mann. 420, A. D. 1833; and *Coats* v. *Chaplin*, 3 Adol. & El. N. S. 483, and cases cited. And see, also, *Potter* v. *Lansing*, 1 J. R. 215; *Holbrook* v. *Wright*, 24 Wend. 169; *Hinsdale* v. *Weed*, 5 Denio, 172; *Price* v. *Powell*, 3 Comst. 322.)

It is, however, urged, that a *consignee* is presumed to be the *owner*. No doubt such is the presumption. The rule on that subject, as stated by Angell, (on common carriers, § 497,) is that on a delivery to the carrier, *on behalf* of the consignee, if the goods are placed at *his sole disposal*, and *no other fact appears*, the legal presumption is, that he is the true owner. Such was the opinion of the court, in *Potter* v. *Lansing*, and *Price* v. *Powell*, above cited.

I was at first much inclined to think that this presumption of ownership was excluded by the pleadings and the stipulation under which the parties went to trial; the defendant having expressly denied that he shipped the goods; which denial, being taken in a legal sense, imports that he neither did it himself nor by another, and is, therefore, inconsistent with the idea of ownership in him at the time of the shipment; and the defendant having also omitted to *aver* ownership as a *foundation* for his claim to recover for the whole injury sustained by the goods, there is no allegation to be supported by the alleged presumption, which is matter of *evidence* only. And I still think, that if, under the pleadings as they stood, the plaintiffs had raised the objection at the trial, they might successfully have insisted that the defendant could have no recovery over against them.

But the stipulation between the parties will be seen, upon a careful examination, to have a somewhat equivocal import, and to have wrought a change in the state of the pleadings which forbids the application of any strict technical rules. By a liberal interpretation, it may mean that the parties consent that the plaintiffs may proceed against the

defendant in either capacity, (*i. e.,* as consignee or owner,) or in both; and if so, then it is fair to intend that the defendant's answer might be read as an answer, in either or both capacities. If this view be taken of the effect of the stipulation, then the plaintiffs, had it been material for them to do so, might properly have insisted, that as ownership was not denied by the defendant, it might be taken as true.

However this may be, the construction given by the parties to this informal and somewhat loose mode of arranging their pleadings, must, I think, conclude them; and in connection with the stipulation, we find them going to a trial upon the whole merits. The plaintiffs make no objection when it is apparent that the defendant is attempting to establish the full claim to damages set up in his answer, and to which he could only be entitled as *owner.* They suffer statements, showing the whole extent of his claim, to go to the jury, as the basis of the verdict, if the injury to the goods, by the plaintiffs' fault, was established. They make no question, in argument, respecting the defendant's right to recover to the full amount proved, if such injury was found by the jury. They do not call the attention of the judge to the point now raised, nor ask any direction on the subject. All this indicates an intent to submit the whole case, and have their whole liability disposed of, and an understanding on their part that the stipulation was broad enough to raise the whole merits, whether the defendant was owner or consignee; and in this view, there was nothing in the state of the pleadings, as thus modified, which forbids the presumption of ownership, so that the plaintiffs should now be permitted to attack the verdict, either as inconsistent with the pleadings, or because the defendant gave no affirmative proof that he in fact owned the goods.

If this case was before us on a motion for a new trial, and it were shown that by misapprehension, mistake, or surprise, the plaintiffs now found themselves in a situation of liability over to third parties, whom they now discovered to be the real owners, I should deem them entitled to relief, for it is,

I think, clear that this judgment would be no bar to a recovery by such owners, unless they elect to adopt the acts of the defendant, and to be bound by the judgment. (See *Dawes* v. *Peck*, 8 D. & E. 330, and cases therewith above cited.)

So if this verdict had been rendered upon the pleadings as originally framed, I should, under the views above expressed, have deemed it at least very doubtful whether, upon the mere record of the pleadings, verdict, and judgment, the plaintiffs treating this appeal as in the nature of a motion in arrest, or an assignment of errors apparent on the record, might not have insisted upon a reversal.

But when the stipulation is taken into view, and the acts of the parties under it, amounting, in substance, to a consent to a submission of the whole question to the jury, and the omission of the plaintiffs to raise the question on the trial, I feel constrained to say that the plaintiffs should be deemed concluded, and, therefore, that the judgment should be affirmed.

Judgment affirmed.