### JAMES B. HILL *versus* LORENZO LEADBETTER.

In England, it has been decided, that if the consignee of goods receive *any benefit* from their transportation, he must pay the freight, although the goods have been damaged in the carrying exceeding that amount. His remedy is by cross action.

In this country, the inclination of judicial opinion is to allow the injury done to the goods by the carrier, to be set off as an answer *pro tanto* to his claim for freight.

When a portion of the goods have been lost, the consignee has been allowed in New York to *recoup* the damages so sustained, in an action against him for the freight.

The consignee, or the party receiving the goods, is in all cases responsible for the freight; the only discrepancy in the decisions being as to whether damages may be allowed in deduction, or must be recovered by separate action.

A. contracted to transport certain goods for B., and delivered them accordingly, save a portion, which he converted to his own use on the route, and for these B. brought his action, and A. suffered a default therein. A. then sued B. for his freight, and B. made no claim to *recoup* the damages so sustained; — *Held,* that the freight was earned, and no deduction having been claimed, the plaintiff was entitled to judgment for the agreed price.

ON EXCEPTIONS from *Nisi Prius,* CUTTING, J., presiding. This was an action of the case.

The plaintiff, in January, 1855, entered into a contract with defendant to haul for him a load of goods from Bangor to No. 6, in Aroostook county, sixteen miles from Patten, and to deliver them at one Knowles' in said No. 6, for an agreed price per ton. He hauled the goods to Patten, where he resided, and there took off two barrels of flour, which he kept and converted to his own use, and delivered the remainder of the load at Knowles' according to agreement.

The plaintiff testified that he took off the two barrels of flour because the load was too heavy.

He testified that he might have told one Gardiner, at Patten, that he kept the flour because he was afraid that Leadbetter would set off the hauling of the load against a sled that he claimed of him.

The defendant, on the above facts, argued that there was a special contract to haul and deliver said load entire, at said Knowles' in No. 6, and having failed for no sufficient cause to perform it, he could recover nothing for hauling.

On the part of the plaintiff, it was further proved, that Leadbetter had sued Hill in trover for the flour at the October term, 1855, at Bangor, and that Hill was defaulted in said suit, though no judgment had been rendered at the time of this trial; that Hill kept the two barrels of flour at Patten till he was sued for it, and then used it up.

The case was referred to the Court with a special agreement that either party might except.

The Court ruled on the above facts, that though there was a special contract to haul said load and deliver it entire at said Knowles', yet the plaintiff was entitled to recover of the defendant the stipulated price for hauling, after deducting therefrom whatever damage might be suffered by the defendant from the non-delivery of the two barrels of flour; and that said damage was nothing in this case, because said Leadbetter had brought his action against said Hill for the two barrels of flour, and did not claim to offset the damages for such non-delivery in this suit.

The Court, therefore, found for the plaintiff for the amount

due for the hauling at the stipulated price; to which ruling and decision the defendant excepted.

*S. F. Humphrey,* for plaintiff.

1. The cases in the books relative to special contracts, and the rights of parties under them, are not entirely uniform; but it is believed that the later decisions are in harmony with the ruling of the Court in this case and fully sustain it.

The result of the decisions touching this point is laid down by Parsons in his work on Contracts, as follows:—"If one party, without the fault of the other, fails to perform his side of the contract in such a manner as to enable him to sue upon it, still, if the other party have derived a benefit from the part performed, it would be unjust to allow him to retain that without paying any thing. The law, therefore, implies a promise on his part to pay such a remuneration as the benefit conferred upon him is reasonably worth; and to recover that *quantum* of remuneration an action of *indebitatus assumpsit* is maintainable." Parsons on Contracts, vol. 2, page 35.

The law, as thus laid down, is fully recognized, if not expressly decided by the Court in this State, in the case of *Rogers & al.* v. *Humphrey,* 39 Maine, 382. And it fully sustains the plaintiff's case.

2. The ruling of the Court relative to off-setting the defendant's damages is in exact accordance with the decision in the case of *Rogers* v. *Humphrey;* and is sustained by *Bassett* v. *Sanborn,* 9 Cush. 58, and *Gleason* v. *Smith & al.* 9 Cush. 484. If the defendant had suffered any damage from the non-delivery of the flour, it was at his option either to prove this damage in set-off, or to bring a separate action to recover it; but if this defendant had suffered no damage, and did not claim any damage in set-off, no deduction should be made.

The case of *Miller* v. *Goddard,* 34 Maine, 102, furnishes no answer to the view I have taken of this case. That was an action for labor, where the plaintiff had made a contract to work for a specified time, and where there had been an absolute want of performance. Had the plaintiff in that case labored during the time agreed, but performed his labor im-

perfectly, the Court would have regarded it differently. This is distinctly intimated in the decision given in that case.

But this is a case where there has been an imperfect performance, not an absolute want of performance. No engagement had been entered into to labor for a specified time.

The plaintiff's contract was not an ordinary contract for service. It does not belong to that class of contracts, but is more nearly allied to contracts for sale, or to do some specific labor on the land or the property of another. And the law applicable to these latter classes of contracts should govern in this case. Parsons on Contracts, vol. 1, page 677.

The case of *Berry* v. *Dwinel*, recently decided by this Court, but not yet reported, fully sustains the ruling of the Court in this case. And the attention of the Court is respectfully called to that decision as substantially settling the law in this case.

*Brett*, for defendant, cited: — *Miller* v. *Goddard*, 34 Maine, 102; *Davis* v. *Maxwell*, 12 Met. 286; *Clark* v. *Smith*, 14 Johns. 326; 2 Smith's Leading Cases, 29, 31, and cases there cited.

APPLETON, J. — The plaintiff has brought this action to recover pay for the freight of a load of goods received by him of the defendant at Bangor, and to be delivered at No. 6, Aroostook county. On his way to the place of delivery, he converted a portion of the goods to his own use, for which the defendant brought against him an action of trover, on which a default has been entered.

It has been decided in England, that if the consignee of goods receive *any benefit* by their carriage, he cannot defend himself from the payment of freight, on the ground that the goods have been damaged by the master, in carrying them, to an amount exceeding the freight. The remedy of the consignee is by cross action. *Shields* v. *Davis*, 6 Taunt. 65.

" The inclination of judicial opinion in this country, seems to be to allow the injury done by the negligence of the carrier, to be set off as an answer, *pro tanto*, to his claim for compen-

sation." Sedgwick on Damages, 451. So, where a portion of the property has not been delivered, the consignee in New York has been allowed to *recoup* the damages so sustained, in an action against him for freight. *Hinsdale* v. *Weed,* 5 Denio, 172.

In *Kaskaskia Bridge Co.* v. *Shannon,* 1 Gilman, 15, it was held, that in an action for freight, the defendant may set off a loss of a portion of the goods agreed to be transported, by the carelessness and negligence of the carrier. In *LaMotte* v. *Angel,* 1 Hawaiian Rep. 136, the question is discussed with great ability by LEE, C. J., and after a full examination of the English and American authorities, he arrives at the conclusion that, in a suit to recover the freight of goods, the consignee may set off *the loss and damage* of the goods, arising from the negligence or *misfeasance* of the carrier.

The party receiving the goods, has been held in all cases responsible for the freight — the only discrepancy between the decisions being, whether the damages from injury to, or non-delivery of the goods, are to be recovered by a separate action or by *recoupment* from the freight earned.

That question, however, does not arise here, for the defendant does not claim a deduction.

The freight having been earned upon the goods received, and the defendant not claiming a deduction therefrom for the goods not delivered, the rulings of the presiding Judge, at *Nisi Prius,* were correct. *Exceptions overruled.*

TENNEY, C. J., and RICE, HATHAWAY, CUTTING and GOODE-NOW, J. J., concurred.