JAMES W. ELWELL AND OTHERS, RESPONDENTS, v. FRANCIS SKIDDY AND OTHERS, APPELLANTS.

*Demurrage — when party not entitled to — Counter-claim.*

A master of a vessel chartered her for three consecutive voyages to Cuba and return to New York, the first to start from a port in Canada, the outward voyages to be with sugar-box shooks, the return ones with sugar and molasses. The charter party specified a certain rate of freight and also of demurrage and bound the cargo to the performance of the charter by the charterer. The vessel was detained in Cuba by the custom authorities on account of the illegal act of the master. A portion of the cargo was also seized on account thereof and its release could only be obtained by the payment of $2,559.38 by the agent of the charterer.

*Held,* that the master was not entitled to demurrage for delay occasioned by the seizure or detention of the vessel for his own unlawful act.

*Held,* also, that a counter-claim to a claim for freight thereunder, could be sustained for loss occasioned by the excessive drainage of the hogsheads of sugar caused by the detention of the vessel after a full cargo had been obtained, such detention arising from the illegal act of the master.

*Held,* also, that a counter-claim could be sustained for moneys compulsorily paid by the agent of the charterer, to release their property seized because of the unlawful act of the master.

APPEAL from an order denying a motion for a new trial made upon the minutes, and from a judgment entered on a verdict at the trial. The plaintiffs were assignees of a claim for freight and demurrage, claimed to be due to the owners of the brig Harry Virden. The defendants were assignees of a bill of lading (held for advances) and also assignees of the consignees, of the cargo brought by said brig from Cardenas to New York. The master of the brig chartered her for three voyages to Cuba and return to New York, the first to

start from a port in Canada, the outward voyages to be with sugar-box shooks, the return ones with sugar and molasses. The charter party specified a certain rate of freight and also for demurrage and bound the cargo therefor. The master, on his first voyage, on applying for his consular manifest, stated his cargo in round numbers at 5,000 sugar-box shooks, and this number was accordingly inserted in the consular manifest. He actually took on board, however, as shown by his own manifest, 7,730. For such inaccuracy or discrepancy, on his arrival in Cuba, the custom authorities fined the master twenty-five dollars, which he paid; afterward a further fine of $568.06 was imposed on account thereof; payment was refused, but a bond therefor was given by the agent of the ship and the charterer, which was enforced after the brig sailed. On the next voyage, on the arrival of the brig at Cardenas, the Intendente ordered the confiscation of the 2,730 shooks in excess of the consular manifest, to relieve which the charterers had to pay $2,559.38 gold. A fine equal to the value was also directed to be imposed on the captain, and to compel its payment a clearance was refused to the vessel, and it was detained a long time after it was fully laden, by reason whereof the sugar sweltered and wasted so as to cause a loss, as claimed, of nine and twenty-six one hundredths per cent, whereas the average on such voyages was only from three to four per cent, causing a damage claimed to be $2,397.60 gold.

*Joshua M. Van Cott* and *James K. Hill,* for the appellants.

*Benedict, Taft & Benedict,* for the respondents.

DYKMAN, J.:

This cause was tried at the Circuit, and at the close of the testimony on both sides the court directed a verdict for the plaintiff, which included freight, demurrage, and interest, and excluded the claim of the defendants upon their counter-claim. This verdict is not founded upon any promise of the defendants, or either of them, for the court refused to submit any question of fact to the jury. We must, therefore, assume that there was no such promise.

The defendants were the assignees of the consignees of the bill

of lading for the cargo of sugar brought to New York from Cardenas on the second voyage of the vessel under the charter party. They, therefore, stood in the place of the consignees, and as they accepted the goods they became liable for the freight. (*Hinsdell v. Weed*, 5 Denio, 172 ; 3 Kent Com., 221 ; Abb. on Ship. [by Story], 284, § 4.) If, therefore, nothing more was included in this verdict, it would only be necessary to examine the question arising upon the defendants' counter-claim. But the court included in the verdict the claim for demurrage, and it becomes necessary to determine whether the defendants are liable for this charge.

This will depend upon the question whether the vessel was detained by the freighter or his agents or consignees, beyond the time allowed by the charter party. The detention complained of took place on the second voyage of the vessel to the island of Cuba. The vessel arrived at Cardenas in March, 1870, about the middle of the month, and was loaded and ready to sail about the middle of April following. It was agreed that twenty lay days were consumed on the second trip. There is some little discrepancy in the case respecting the date, but this is not very important. The vessel was detained from the time she loaded in April until the sixteenth day of June following. That detention was for the following reasons :

The first cargo under the charter party was taken on at Pierreville, in Canada, and consisted of sugar-box shooks. As this place was in the district of Quebec, the residence of a Spanish consul, it became necessary for the captain of the vessel to obtain from the Spanish consul at that place a consular manifest of his cargo. While the vessel was taking on the cargo, the captain made an effort to find the Spanish consul at Quebec, but he had gone to Montreal, and he thereupon sent to Montreal for his consular manifest, and stated his cargo, in round numbers, at 5,000 sugar-box shooks. This number was accordingly inserted in the consular manifest. The number actually taken on was 7,730. When the vessel arrived in Cardenas, the captain presented to the custom-house officer the consular manifest, which was inaccurate, of course, and called for only 5,000 shooks, and also his own manifest, which stated the true number at 7,730. By such inaccuracy the captain incurred a fine of twenty-five dollars, which was paid by Mr. Bacot, who was the

agent both of the ship and the charterer. Afterward the custom-house officers imposed on the captain a further fine of $568.06. Payment of this fine was refused, but Mr. Bacot gave a bond for its payment, if it should be enforced by the intendente. After the vessel sailed, the fine was enforced and paid by Mr. Bacot. The vessel arrived in Cardenas on her second voyage in March, and the intendente ordered the confiscation of the 2,730 shooks, that being the number in excess of the number called for by the consular manifest, and a fine equal to their value to be imposed on the captain, and in order to compel the payment of the fine by the captain a clearance was refused to the vessel. The captain resisted and appealed to the higher authorities, who, after a delay of two months, allowed the vessel to be cleared, and she sailed on her second return voyage on the sixteenth day of June.

Now whatever else may be said about this delay or the cause of it, or the merits of the controversy that caused it, it cannot be said that it was caused by the defendants or their consignor or his agent; and as unreasonable detention of the vessel by the freighter or his consignee lies at the foundation of all liability to the owner for demurrage, it must follow that no such liability was shown in this case. So far from the facts showing any detention of the vessel by the freighter or his consignees, they show that the detention was caused solely by a breach of the revenue laws of the island of Cuba by the captain of the vessel, and that such breach was willful and intentional. It is no answer to this to say that the Cuban authorities visited upon this vessel unusual and extraordinary penalties for this breach of their revenue laws. It will not do for the captain to say, it is true I committed a breach of the revenue laws but I ought to have been let off with a fine of twenty-five dollars, and all beyond that is improper and illegal. Let it be conceded that all this is so, that does not change the matter at all. The Cuban authorities treated the conduct of the captain as an attempt to perpetrate a fraud upon the revenue laws, and did what was done to detain the vessel for that reason. That was the proximate and sole cause of the delay.

It follows, from this view, that the item of demurrage cannot be recovered against the defendants, and that there must be a new trial.

The court on the trial rejected the defendants' counter-claim for damages; and as that question will again be presented on the new trial, it is proper that we should settle it so far as we can do so. The first item of this counter-claim arises out of the following facts:

The Intendente imposed a fine upon the captain for infringements imputed to him in his manifest, owing to the difference existing between the two, as has been before stated, and the 2,730 box shooks, which gave rise to the infringement attributed to the captain, were seized, the seizure approved and an embargo ordered to be laid upon them, and Mr. O'Callahan, the owner, was required to give up the shooks or pay their equivalent in money. Proper resistance was made by Mr. Bacot on behalf of Mr. O'Callahan, but no effect was produced, and an order of attachment was issued and property up to the amount of this claim was levied on a lot of sugar in a lighter, and the same was stopped in the bay. At this time, and compelled by these measures, this sum was paid into the treasury of the custom-house, under protest, and reserving all rights against the vessel and owners. It appears from the case that there was no way of avoiding such payment as the treasury, in such cases, admits no application until after payment.

We think these facts show that these goods were seized, their payment compelled by the fault of the captain, and that this is a well recognized ground of liability. (Abbott on Shipping, 383; Maclalahan on Shipping [2d ed.], 388; *Gosling* v. *Higgins*, 1 Camp., 451; *Howland* v. *Greenway,* 22 How. [U. S.], 491.) We think, therefore, that the court below fell into an error in refusing to charge the jury as requested, that the defendants were entitled to recoup or set-off against the freight the sum the charterer was obliged to pay to procure release of his sugar-box shooks, with interest.

The second item in the defendants' counter-claim is the damage arising from the excessive drainage from the hogsheads of sugar, arising from the length of time which elapsed between the shipment and delivery of the sugar. The facts, out of which this claim arises, have been already stated. In order to compel the payment of the fine imposed upon the captain for the infringements imputed to him in his manifests, a clearance was refused to his vessel, and she was not allowed to go to sea until about the middle of June. During all this time the sugar sweltered and roasted, and caused

the loss which forms the basis of this item. As this waste was caused by the unwarranted delay, which we have before seen was the fault of the captain, we think the court below also fell into an error in refusing to charge as requested, that the defendants were entitled to set off or recoup against the freight the damage to, and loss on the cargo of sugar, occasioned by the detention of the vessel after a full cargo had been shipped and the vessel was ready to put to sea.

If this loss had been caused by a voluntary delay to sail, the liability of the owners would not be disputed, and we do not see how the plaintiffs are in any better position when the delay was caused by the fault of the captain. The delay was a breach of duty as well as a breach of contract, and is not excused by the act of God, the perils of the sea, or the act of a public enemy.

In the case of *Hinsdell* v. *Weed* (5 Denio, 172) Judge McKissock held that the consignee may recoup the damage on account of the property not delivered in the action against him for freight, and this decision is referred to with approbation in the case of *Davis* v. *Pattison* (24 N. Y., 324).

The judgment must be reversed and a new trial granted.

Present — Barnard, P. J., Gilbert and Dykman, JJ.

Judgment and order denying new trial reversed and new trial granted, costs to abide event.