## CANFIELD *vs.* THE NORTHERN RAILROAD COMPANY.

In regard to the payment of freight, and the implication of a promise, intermediate consignees stand in the same attitude as respects the carrier of the goods, as the ultimate consignees and owners assume.

A request, in a bill of lading, to pay the freight, on condition that the property is delivered, is addressed to *every consignee named;* and the acceptance of the property subject to charges, creates an implied undertaking to pay those charges.

An intermediate consignee to take care of, and forward, the goods, cannot without special authority in the bill of lading, adjust the matter of damages on account of losses or injuries thereto; and has no right to insist upon such adjustment as a condition of paying the freight to which the goods were subject when they came into his hands.

If he receives and holds the goods, under the bill of lading, he becomes primarily liable on the implied assumpsit to pay the freight actually earned on the amount or quantity delivered.

THIS was an action to recover the freight on a cargo of wheat, shipped on board the plaintiff's vessel, at Detroit, under a bill of lading as follows:

"*Detroit, Nov.* 15, 1853.

Shipped in good order and condition, by H. N. Strong as agent, and forwarder for account and risk of whom it may concern,

on board the schooner Argo, whereof Wilcox is master, bound for Ogdensburgh, the following articles as here marked and described, to be delivered, in like good order and condition, as addressed in the margin, or to his or their assigns, or consignees, upon paying the freight and charges as noted below, the dangers of navigation excepted." The property was consigned on the margin of the bill, "Burbank & Langdon, Montpelier, Vt. *Care Northern R. R. Co. N. Y.*"

The master delivered the wheat to the defendants, in pursuance of the bill of lading. It was ascertained, in the process of delivery and measurement, that the wheat fell short in quantity, 175 bushels, of the amount mentioned in the bill of lading. The master demanded the amount of freight actually earned, upon the quantity of wheat delivered. The defendants refused payment as exacted, but offered to pay the balance of freight, after deducting the value of the wheat deficient. No adjustment was made of the 175 bushels, and no freight was paid. This action was brought to recover the freight earned upon the quantity of wheat delivered to the defendants. It was tried before a referee, upon whose report a judgment was entered in favor of the plaintiff, for the amount claimed.

The defense rested mainly on two grounds, 1. That the defendants, by the terms of the bill of lading, were the mere agents of the owner of the property, and hence that no promise to pay the freight could be implied; and 2. That the defendants offered and tendered to the master of the vessel all that the plaintiff was entitled to, being the freight on the wheat delivered, less the value of the 175 bushels deficient.

The defendants appealed.

*J. Mullen,* for the plaintiff.

*Wm. C. Brown,* for the defendants.

*By the Court,* HUBBARD, P. J. There are two principal questions arising on this appeal. 1. Whether this action, on the implied assumpsit, can be maintained against the defendants

who are not the owners of the property, and not in any way connected with the title, but are simply consignees for the special purpose of custody and further transportation as common carriers. 2. If maintainable, whether the defendants were authorized to require of the master an adjustment of the wheat deficient, and the deduction of the value of it, from the freight, as a condition of payment.

Both these points of inquiry must, I think, be decided against the defendants.

I. The usual clause in a bill of lading, making the payment of freight by the consignee a condition of the delivery of the goods, is inserted for the benefit of the carrier. It is regarded as a letter of request from the consignor, and the reception of the property causes an implication that the consignees intend to comply with the request.

The law implies a promise, upon which the carrier may found an action for the freight. (*Abbott on Shipping*, 421. 3 *Kent*, 219. 3 *Bing*. 383.) This is the settled rule as it respects the *final* consignee, named in the bill of lading. The implication may be said to rest partially on the assumption that he is the owner of the goods, but it rests mainly upon the terms of the shipping contract, and the carrier's lien.

I can see no good reason why the rule which looks with a single eye to the rights and security of the carrier, should not be extended, and applied to every consignee named in the bill of lading, whether *final* or *intermediate.* The carrier, by the delivery of the goods, loses his lien, and by the payment of his charges, the middle man acquires his lien. No injustice can therefore be done, and the carrier would, under the rule, be protected according to the beneficial nature and intent of the contract of shipment. By the letter of the bill of lading, no distinction is made between an intermediate and final consignee. In terms, the request to pay the freight as a condition of delivery, is addressed to every consignee named, and when the property is received and held under the bill, no distinction, I think, should be made.

In this case the defendants are forwarders and common car-

Canfield *v.* The Northern Railroad Company.

riers. They received the wheat as such, in pursuance of the consignment, and had they paid the carrier his freight and charges, as requested in the bill of lading, would have acquired his lien.

The general rule, within which an implied promise may be predicated against the defendants, as intermediate consignees, is clearly stated in *Abbott on Shipping*, page 421. "A man who obtains goods as the holder of an instrument by which his right to claim them is conditioned upon the payment by him of the charges to which they are therein stated to be subject, cannot complain if his conduct be thought to raise an inference, that he undertakes to pay such charges." Again, at page 423: "If a person accepts any thing which he knows to be subject to a duty or charge, it is rational to conclude that he means to take the duty or charge on himself."

The defendants in this case received the wheat burdened with the lien of the carrier, and must be held to have assumed the payment of his charges.

It is true that the master might have reclaimed the custody of the wheat and the revival of his lien, but he was not bound to do so. The defendants retained the wheat after discovering the deficiency, and held it under the bill of lading. The defendants doubtless might have refused to receive the wheat at all, on account of the deficiency, assuming that there had been a loss by the negligence of the master, on the ground that the request to pay the freight, was conditioned upon the delivery of the *whole amount* of wheat specified in the bill of lading.

But the defendants did not repudiate the consignment; they accepted the wheat delivered, and put themselves upon the distinct ground, that in behalf of the owner they were authorized as consignees to require an adjustment of the loss.

II. Had the defendants legal authority to make or to require such adjustment as a condition of the payment of freight; in other words, was the tender of the balance of freight after deducting the value of the 175 bushels of wheat deficient, sufficient? I think it was not, and I base my conclusion on the ground that there was no agency in behalf of the owner, authorizing the defendants to make any adjustment.

The defendants are middle men ; all their powers and rights are derived from the terms of the bill of lading, as intermediate consignees. The bill is silent in respect to an adjustment for any damages or deficiencies of cargo, and liquidation out of the freight earned. In this respect, this case materially differs from the case of *Wilson* v. *Van Santvoord,* (*MS.*) decided in this court, in January, 1853, cited on the argument. In that case the bill of lading contained this special clause : "*damages or deficiencies, if any, to be deducted from charges by consignees.*" The defendant was an intermediate consignee, to whose care the property was consigned, at Albany, for further transportation. When the cargo was delivered, there was an ascertained deficiency of *seven barrels of beef.* The defendant offered to pay the balance of freight after deducting the value of the lost beef, but the master, in behalf of the plaintiff, the owner of the boat, refused to make the deduction. It was held that the defendant was authorized to require the adjustment, and the plaintiff could not recover in the action because of his refusal. The decision was put upon the force of the terms of the bill of lading, that the deduction was made a part of the contract, and a condition of the payment of freight ; that in one sense it was the duty of the consignee to insist upon the adjustment, inasmuch as the freight was made a sort of fund, to indemnify against losses. It was also held that the carrier having delivered the property, lost his lien, and that no implied assumpsit could be alleged, because the consignee, Van Santvoord, had complied with the conditions of the bill of lading.

In the case at bar, there is no such clause in the shipping contract, and none can be implied, for the reason that no adjustment which the parties to this suit could have made of the 175 bushels of wheat would have been binding upon the owner, except upon *subsequent ratification.* These parties are not connected by contract or special agency with the title to the cargo of wheat, and could not, as between themselves, have effected a settlement of damages for the loss of a portion of the wheat by the assumed negligence of the master, which would estop the owner of the property from readjusting it. As between these

Canfield *v.* The Northern Railroad Company.

parties, the fact of loss could not be inquired into. They are third parties, as to whom the bill of lading is conclusive. This was so held in the case of *Wilson* v. *Van Santvoord.* The question of a mistake as to the quantity of property mentioned in the bill of lading, can only be inquired into and settled between the carrier and the owner of the goods. In an action by the carrier, against the owner, for freight, the latter may recoupe his damages growing out of the breach of the carrier's contract, and the bill would doubtless be *prima facie* evidence of the amount, and condition, of the property shipped; but the carrier may explain the bill, by showing a mistake in the quantity and condition, and that he has complied with his legal duty, in delivering all the property and in as good order as received.

It was therefore unimportant, in this case, to litigate the question whether all the wheat actually shipped was delivered to the defendants. But the circumstance that the referee has found, upon the evidence given on that subject, that all the wheat shipped was delivered, and that there was a mistake in the bill of lading, goes to strengthen the position that the question should be left to the owner of the property to adjust. Had the deduction been made in this case, which the defendants demanded, it would have involved the necessity of another, or a suit against the owner of the wheat, which would have been avoided had the defendants refused to receive, and the plaintiff sought his remedy under his lien.

It seems to me, therefore, clear, that in regard to the payment of freight, and the implication of a promise, the defendants as *intermediate consignees* stand in the same attitude, as respects the plaintiff, as *Burbank and Langdon, the ultimate consignees and owners ;* that the request in the bill of lading to pay the freight on condition that the property is delivered, is addressed to *every consignee named ;* that the acceptance of the property subject to charges, begets an implied undertaking to pay those charges; and that an intermediate consignee, to take care of and forward the goods, cannot without special authority in the bill of lading, adjust the matter of damages, on account of losses or injuries thereto ; that if he receives and holds the goods under

the bill, he becomes primarily liable on the implied assumpsit to pay the freight actually earned on the amount or quantity delivered.

The judgment entered on the report of the referee must be affirmed.

[Onondaga General Term, October 2, 1854. *Hubbard, Pratt* and *Bacon,* Justices.]