Morse and others, Respondents, v. Pesant and another,
Appellants.

A consignee, who accepts a cargo, with knowledge of the terms on which it
was transported, makes himself, by adoption, a party to the contract
between the ship-owner and the consignor.

He is bound by a stipulation in the charter party, which provides for the
discharge of the cargo, in accordance with the custom prevailing at the
port of delivery.

Strict demurrage can only be claimed when provision is made for it in the
contract; but damages in the nature of demurrage may be recovered by
the ship-owner, for unwarranted detention through the fault of the con-
signee.

THE action was by the respondents, as owners of the ship
" Jane Parker," to recover damages in the nature of demur-
rage against the appellants as consignees.

The cause was tried in the Superior Court before Judge
Pierrepont, and resulted in a verdict in favor of the plaint-
iffs for $900. The judgment was affirmed at the General
Term, and the particular facts are detailed in the report of
the case in 7 Bosworth, 199.

The charter party was entered into at Havana, with Hamel
& Co., who contracted in their own names, but in behalf of
the defendants, one of whom was there at the time. By its
terms, the master of the vessel was to make sail with all
possible dispatch for the port of New York, " and on his
arrival, make a true and faithful delivery of the cargo,
according to custom, and the bills of lading." In a subse-
quent clause it was provided that " the cargo shall be taken
in and discharged *according to custom* of the respective ports
of loading and unloading." In the bill of lading, the prop-
erty was consigned to the defendants, to be delivered to them
at New York, " they paying freight for the said goods as per
charter party." The defendants received the bill of lading
with the charter party.

The ship arrived at New York, and the defendants were
notified of that fact, on the 30th of May, 1857. On the

1st of June, the entry was made at the custom-house, and the vessel was taken, by the direction of the defendants, to the Pierrepont warehouses.

It was proved that by the custom of the port of New York, it was the right of the ship-owner to commence discharging, and the duty of the consignees to receive cargoes of this description, immediately after the expiration of seven days from the entry of the vessel and notice of readiness to discharge.

The market was at that time dull and the duties on sugar, with which the ship was laden, were then thirty per cent, and were to be reduced to twenty-four per cent on the first of July, making a difference under the new tariff of some $3,000 in the amount of duties payable by the consignees.

The defendants accordingly declined to pay the duties and allow the master to discharge the cargo at a warehouse where such discharge was practicable, but obtained a bonded permit and ordered the sugar to be delivered in the Pierrepont warehouses, where they could not be received for a considerable period.

The ship was thus detained for eighteen days beyond the time, within which by the custom at that port, the ship-owners were entitled to unload, and the cargo was then received by the consignees who paid the freight, but refused to pay for the detention of the vessel. The amount of demurrage for delay at Cienfuegos, was fixed in the charter party at $50 a day; and it was proved that this was a proper allowance for the delay at New York.

A general exception was taken to the refusal to charge in accordance with nine propositions submitted on the part of the defendants; and specific exceptions were taken to each clause of the instructions given by the judge to the jury.

*Wm. H. Anthon,* for the appellants.

*Dexter A. Hawkins,* for the respondents.

VOL. II.    3

Porter, J. The acceptance of a cargo of goods by the consignee, is a recognition of his liability to the ship-owner. The contract under which the property was transported becomes his by adoption, and when he avails himself of its provisions so far as they inure in his favor, he is charged with the correlative obligations which spring out of it, whether by mere operation of law or by the force of express stipulations.

In this case the ship was chartered by the consignees in the name of parties who were acting in their behalf. The bill of lading referred in terms to the charter party, and the defendants were the holders of both, when the vessel arrived at the port of New York. By express stipulation the cargo was to be discharged according to the custom of that port. On the trial it was proved and found that by such custom it was the duty of the consignees to be in readiness to receive the cargo, at the expiration of seven days after notice of the ship's entry. In order to avail themselves of a prospective reduction in the rate of duties, they chose to detain the vessel for an additional period of eighteen days, before permitting the cargo to be discharged. This delay was unauthorized and the ship-owners were entitled to redress.

It is true that strict demurrage cannot be claimed where no provision is made for it in the contract; but it is a familar and settled principle of maritime law, that the party aggrieved may recover damages for detention, in the nature of demurrage, against a consignee who admits his obligation to receive the property, but to promote his own interest or convenience detains the ship beyond the period contemplated in the contract. (*Clendaniel* v. *Tuckerman*, 17 Barb., 184, 190; Abbott on Shipping, 311; *Harmon* v. *Gandolph*, Holt's N. P., 35; 1 Parson's Maritime Law, 262, note 3, and authorities there cited.)

The authorities which are supposed by the appellants to favor an opposite view have not been overlooked; but they are inapplicable to a case like this, where the detention was in breach of a known custom, by which the parties agreed to be bound.

The fact that a portion of the cargo was shipped to other consignees constitutes no defense to the action. (*Hill* v. *Idle*, 4 Camp., 327: *Leer* v. *Yates*, 3 Taunt., 386.)

The judgment should be affirmed.

BROWN, J. · The charter party and the bills of lading upon the shipment of the goods were executed at one and the same time in regard to the same transaction, and together express the true nature of the contract and the obligations of the parties under it. The cargo was to be taken in and discharged according to the custom of the respective ports of loading and discharging—that is the ports of Cienfuegos and New York. The sugars were to be delivered in good order and condition at the latter port to Messrs. Pesant Brothers, the defendants, they paying freight therefor, as per charter party. Thus, the payment of the freight was the condition of the delivery of the goods; and, whenever the consignees accepted the goods, they thereby became parties to the contract, incurring the obligation to pay the freight and the demurrage for unnecessary and improper detention, if any accrued to the owners of the vessel. The plaintiffs proved what was the custom of the port of New York, which allowed the consignees seven days after the arrival of the vessel to provide for the discharge of the cargo. And they also proved the time the vessel was delayed beyond that period in consequence of the goods being put in bond and sent to a bonded warehouse. To pay the duties and have these goods discharged in the usual way, or to put them in bond under the acts of congress, was entirely at the option of the consignees. To adopt the latter course, was a deviation from the general custom; and, as it entailed delay to the vessel beyond the usual time allowed for the discharge of the cargo, it certainly presents a just and equitable claim for compensation in the form of demurrage. The judge, upon the trial, submitted the question of the existence of the customary mode of discharging cargoes from vessels in the port of New York, as well as the question of delay, to the jury, directing them that, if they found both in favor of the plaintiffs, they were entitled to

recover demurrage to the extent of $50 a day, that being the sum fixed by the charter party for delay at the port of Cienfuegos, as well as proved to be the fair value or compensation for detention in New York. This charge covered the whole case and properly disposed of the numerous requests to charge made by the defendants at the close of the trial. The jury found a verdict for the plaintiffs for $900, upon which judgment was rendered in the Superior Court, which, I think, should be affirmed.

All concur.