GEORGE D. GILSON, Respondent, *v.* EDWARD MADDEN, Appellant.

(GENERAL TERM, EIGHTH DISTRICT, SEPTEMBER, 1869.)

The original shipper of goods, upon a boat or vessel, for transportation under the ordinary bill of lading, or its equivalent, remains liable to the master for freight money earned, although the latter delivers the consignment without exacting payment for carriage, of the consignee; and this is so, although the consignee offers to pay the freight, which the master refuses to receive.

M. shipped goods to W., the bill of lading contained a marginal memorandum, "Ac. H. & Co."—*Held*, M. must nevertheless be deemed the consignor.

THE facts sufficiently appear in the following opinion:

*J. D. H. Chamberlain*, for the appellant.

*John Ganson*, for the respondent.

Present—MARVIN, LAMONT and BARKER, JJ.

By the Court—LAMONT, J.   This is an appeal from a judgment entered on verdict for the plaintiff, and also from an order at Special Term, denying defendant's motion heard on the judge's minutes, for a new trial.

The action is brought to recover a balance due for freight on a quantity of coal transported on plaintiff's boat, from Buffalo to Rochester *via* the Erie canal.   There was a further claim for demurrage, or detention of the boat at Buffalo, but no question arises in the case, except as to the liability of the defendant for the balance due for freight, for which the justice at circuit directed a verdict.

The coal was engaged by the captain of the boat, at Buffalo, of the defendant, loaded there, and carried, and delivered to the consignees in Rochester.

The bill of lading was as follows:

No. —.                          BUFFALO, *Nov. 14th*, 1868.

Shipped in good order, by Edward Madden, on board the boat J. M. Reap, of Pittston, whereof G. D. Gilson is master,

Gilson *v.* Madden.

the following articles, to be delivered in like good order as received, to the place of destination as consigned in the margin, without delay (the dangers of navigation only excepted). In witness whereof, the master of said vessel hath affirmed to two bills of lading of this tenor and date; one of which being accomplished, the other to. stand void. (Then followed the quantity of coal, price of freight per ton, Buffalo charges per ton, and the following clauses): " Capt. collect freight and charges; advanced capt. to be deducted from freight, $94.47. Messrs. Woodward & Son, please hold same, subject to my draft, and pay capt. balance on safe delivery."

(Signed)                          E. MADDEN.

The bill of lading was signed by the captain. In the margin was: " Acc., John Hearn & Co." " C. B. Woodward & Son, Rochester, N. Y."

After delivery of the coal to Woodward & Son, the consignees, at Rochester, they offered to pay the balance of the freight. The plaintiff declined to receive it, unless they would also pay his other claim for detention at Buffalo, which they refused to do. They offered a check for the freight, and have been ready and willing ever since to pay that amount.

There is no other proof in the case, as to the ownership of the coal, than what is to be inferred from the bill of lading, and the fact that the defendant had the same in possession at Buffalo, and engaged its transportation, without disclosing any other owner or party interested. The consignee, receiving the cargo under the bill of lading is, as the cases agree, liable to pay the freight by virtue of such receipt; so the assignee or endorsee of the bill of lading becomes his substitute as to such liability, and the consignee becomes exempt therefrom where he does not receive the goods, and they are made deliverable to the consignee or his order. (*Meriam* v. *Funck*, 4 Denio, 110; *Morse* v. *Pesant*, 2 Keyes, 16; Abbott on Shipping, 285; 3 Kent Com., 221.)

The usual clause in the bill of lading, makes the property deliverable to the consignee or his assigns, *he or they paying the specified freight.* (Abbott on Shipping, 214.)

Such clause in the present bill was wanting, but the direction signed by the shipper, " Capt. collect freight and charges; advanced capt., to be deducted from freight, $94 $\frac{47}{100}$. Messrs. Woodward & Son, please hold same, subject to my draft, and pay capt. balance on safe delivery," was legally equivalent to the usual clause above mentioned, and created the same legal liability. (*Hinsdell* v. *Weed*, 5 Denio, 172; *Davis* v. *Pattison*, 24 N. Y. R., 317.)

That Woodward & Son were the consignees of the coal, cannot be controverted. Aside from the bill of lading, which makes them so, the complaint alleges the fact and the answer admits it.

The position of the plaintiff's counsel, that Woodward & Son were *agents* by the terms of the bill of lading, and as such not personally liable for the freight money, contradicts a fact admitted by the pleadings, and which, while the pleadings stand, must be taken to be true. (Code, § 168.) But aside from the fact established by the pleadings, the bill of lading itself made Woodward & Son the consignees; they are so named in the bill and margin. Even had the cargo been consigned to their *care*, they would have been such. (*Fitzhugh* v. *Wiman*, 5 Selden, 559, 560.) Whereas they are here named consignees without any qualification.

Now, although the consignees were clearly liable to pay this balance of freight, the other question arises whether Madden, who shipped the goods, has been relieved from liability, either in the manner of shipment originally, or by the receipt of them by the consignees, who offered and are willing to pay the bill.

Nothing appears in the case to distinguish this transaction from an ordinary shipment of goods, consigned by the bill of lading to a party named.

Madden, the defendant, had the coal on hand; he did not profess to act otherwise than on his own account in freighting the boat.

He was the contractor with the master. Part of the freight he advanced, and made provision for the payment of the balance through a third party, the consignee.

Gilson v. Madden.

What were the relations between Madden, the shipper, Woodward & Son, the consignees, and John Hearn & Co., has not been disclosed by the evidence.

The case must stand, I think, on the same footing as the ordinary case of shipment, under the customary bill of lading.

In *Griswold* v. *The New York Insurance Company* (3 John, 328), Ch. J. KENT says: "The contract of affreightment, like other contracts of letting to hire, binds the shipper personally, and the *lien* which the ship-owner has on the goods conveyed is only an additional security for the freight. This *lien* is not incompatible with the personal responsibility of the shipper, and does not extinguish it." In *Barker* v. *Havens* (17 John, 234), SPENCER, Ch. J., expressed the opinion "that if it appeared that the goods were not owned by the consignor, and were not shipped on his account, and for his benefit, that the carrier would not be entitled to call on the consignor for freight"; and he adds, with caution: "I should incline to the opinion that, in all cases, the captain ought to endeavor to get the freight of the consignee." In that case, the consignor was held liable for the payment of the freight. The court refer to the case of *Shephard* v. *De Bernales* (13 East, 568), observing that: "Lord ELLENBOROUGH there examined all the cases, and he considered the clause introduced for the benefit of the carrier of the goods only, and merely to give him the option, if he thought fit, to insist upon his receiving freight abroad before he should make delivery of the goods; and that he had a right to waive the benefit of that provision in his favor, and to deliver without first receiving payment, and was not precluded by such delivery, from afterward maintaining an action against the consignor."

In *Davis* v. *Pattison* (24 N. Y. R., 322), ALLEN, J., says: "The fact, that the law gives an action against an agent, if it does so, when acting and receiving goods *as consignee*, does not discharge the principal. The carrier had his election to retain the property until payment of freight, or, having

waived this right, and delivered it, to look to the *consignee-agent*, or his principal."

In *Burton* v. *Strachan* (3 E. D. Smith, 192, note *a*), the action was brought to recover freight of the consignees (named in the bill of lading). They had endorsed the bill of lading to another party, before the arrival of the vessel, and the endorsee had received the goods. The consignees insisted, that their endorsee, receiving the goods under the bill of lading and endorsement, were liable for the freight money, and that they, the consignees, not receiving, were not liable, and so held the court; but the opinion states that the consignors, no doubt, are liable for the freight.

In *Jobbitt* v. *Goundry* (29 Barb., 511), it is stated, that the *neglect* of the carrier to collect. freight of the consignee, does not affect the liability of the consignor to the carrier for it.

The cases proceed upon the ground, that the original shipper, unless he appears to act as agent for others, is bound by the contract of affreightment as evidenced by the ordinary bill of lading, to pay the freight money. This is the original bargain made, and does not cease to bind the shipper until it is discharged by actual payment, where freight is once earned and becomes due. (Abbott on Shipping, 285 ; 3 Kent, 222.)

The learned counsel for the defendant insists strenuously that John Hearn & Co., are the consignors by the terms of the bill of lading, and Woodward & Son, the consignees, and that Madden is but the agent of Hearn & Co. ; that this all appears on the face of the bill, consequently Madden cannot be made liable as consignor, he apppearing only to have acted as the mere agent of Hearn & Co., the real consignors. This is not a correct view of the legal effect of the bill.

The fact that goods are shipped to A for B, or on account of B, proves no more agency on the part of the shipper for B, than the fact that goods are shipped to A, proves an agency on the part of the shipper for A.

It may indicate to whom the goods are to go, on or after. arrival, but it cannot be held to mean anything more.

It is rather a direction for the consignees' guidance and

instruction, than for any other purpose.    Now, what difference does it make to the carrier, whether the goods are shipped to be delivered to A or to B, or to A for B, or to one person on account of some other person.

What is the carriers' duty?    To deliver the consignment to the party designated to receive it, whether the receiver is to keep it for the original shipper, or to hold it on account of some other party designated by the shipper, does not concern the carrier.

· His whole duty is performed by carriage and delivery as per his bill of lading.    With much more reason might it be claimed that the shipper is the mere agent of the person to whom the property is ordered to be delivered, the consignee himself; for the legal presumption is, that after the goods are put aboard with such directions, he becomes the owner.    (*Fitzhugh* v Wiman, 5 Selden, 562, per SELDEN, J.; *Davis* v. *Puttison*, 24 N. Y. R., 320, per ALLEN, J.)

To hold, then, that the party designated to receive the goods at the end of the voyage, whether consignee, or to take from the consignee, is the principal, and the shipper his agent, would be to exempt the shipper from liability, for the freight, in all cases; for every bill of lading necessarily shows such a state of facts, and such a relation of parties.

In the case of *Hinsdell* v. *Weed* (5 Denio, 172), the flour was shipped by Wilkins, Marsh & Co., of Buffalo.    By the bill of lading it appeared, that the flour was consigned to the "care of E. Weed, for John Thomas."    At the foot of the bill of lading, there was an order, signed by Wilkins, Marsh & Co., as follows:  "On safe delivery of all above flour, E. Weed will please collect of John Thomas freight and charges, and pay eighty-two and forty-four hundredth dollars to O. B. Brackett (the master of boat), or order."    Now, according to the argument of the learned counsel for the defendant, John Thomas was the principal in the case cited, and Wilkins, Marsh & Co. his agents; the cases are alike in principle, yet the learned judge, in his opinion (pp. 178, 179), makes Wilkins, Marsh & Co. the consignors, and says they were liable for the freight.

I cannot entertain a doubt but that Madden, the defendant in this case, was a principal, and not an agent; that he was the consignor and original contractor, with the plaintiff, for the carriage of the goods, and was liable to pay the freight money; that it was optional with the plaintiff to demand the payment of the consignee, or to deliver to the consignee the goods, and call on the shipper for payment.

This was the effect of the charge excepted to.

The order of Special Term, denying a new trial, should be affirmed, and the judgment appealed from should be affirmed, with costs.

Judgment affirmed.