JOHN T. DAVISON et al., Respondents, *v.* THE CITY BANK, Appellant.

Plaintiffs carried, on board their vessel, a cargo of wheat, from M. to O. By the bill of lading it was to be delivered " as addressed on the margin, or his or their assignees or consignees, on paying the freight and charges noted; " on the margin was written " Acct. T. L. Baker, to City Bank " (defendant). On arrival, defendant's cashier directed the wheat to be delivered at an elevator, subject to its order, saying, also, that the proprietors would pay freight. The proprietors of the elevator paid a portion of the freight, and gave a check on New York for the balance, which was sent forward, presented, payment refused, and the drawers duly notified. Defendant acted in the matter as agent of the M. Bank, but this fact did not appear on the bill of lading, and was unknown to

plaintiffs. In an action to recover the balance of the freight, *held*, that defendant, as consignee, upon acceptance of the wheat (which was done by the order) and delivery at the elevator, became liable for the freight; that it was not discharged from its liability by the order, or by the assurance that the proprietors of the elevator would pay; and, as there was no agreement that the check should be taken as payment, and no laches, to the damage of defendant, the taking of the check did not discharge defendant from liability.

(Argued September 29, 1873; decided January term, 1874.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, in favor of plaintiffs, entered upon an order denying motion for new trial, and directing judgment on verdict.

This action was brought to recover a balance alleged to be due for freight upon a cargo of wheat carried on plaintiffs' schooner, from Milwaukee to Oswego.

In the bill of lading, Mower, Church & Co. were named as consignors, the property " to be delivered in good order and condition as addressed on the margin, or his or their assignees or consignees, upon paying the freight and charges as noted." In the margin of the bill, was the following entry: " Acct. T. L. Baker, to City Bank, Oswego, N. Y." The wheat was carried to Oswego. The captain of the vessel called at the City Bank, and was first verbally directed to deliver the wheat to the Corn Exchange Elevator, and, afterward, the cashier of the bank indorsed on the back of the bill of lading the following:

" Deliver to the Corn Exchange Elevator, for account of the Milwaukee National Bank, subject to the order of the City Bank.

" Oswego, *October* 9, 1869.

" D. MANNERING,
" *Cashier.*"

The captain delivered the wheat in accordance with this direction to the Corn Exchange Elevator, which was owned by A. F. Smith & Co. Smith & Co. gave the captain receipts

for the wheat, paid part of the freight, and gave their check for the balance on the Fourth National Bank of New York. There was no agreement that the check should be taken in payment of the freight. It was sent forward to New York, presented for payment, and payment refused. The drawers were duly notified of the dishonor of the check, and payment of the freight demanded and refused.

It was proved on the trial, under the objection of the plaintiffs' counsel, that the wheat was purchased in Milwaukee by Mower, Church & Bell, for A. F. Smith & Co. The money was advanced by the Milwaukee National Bank, to whom drafts therefor were delivered, drawn on A. F. Smith & Co., which were annexed to copies of the bills of lading, and sent forward to the City Bank to procure their acceptance. J. S. Baker, named in the bill of lading, was cashier of the Milwaukee National Bank. The wheat was sent to defendant, in order to secure the payment of the drafts. Defendant had no pecuniary interest in either the wheat or the drafts. Smith & Co. sold the wheat and appropriated the avails, leaving the drafts unpaid. Neither masters nor owners had any knowledge or notice of the manner the wheat was purchased, or of the drawing or the payment of the drafts.

A verdict was directed for the plaintiffs, for the balance of freight unpaid, which was rendered accordingly. Exceptions were ordered heard at first instance, at General Term.

*George G. French* for the appellant. Defendant is not liable, under an implied promise, to pay the freight. (*Gibson* v. *Stevens*, 8 How. [U. S.], 384, 399 ; *Lewis* v. *McKee*, 2 L. R. [Exch.], 35.) The order given by Mannering, followed by delivery to the Corn Exchange Elevator and receipted for by Smith & Co., made the latter firm the assignee of the cargo for the payment of freight. (*Ogden* v. *Coddington*, 2 E. D. S., 328 ; *Merian* v. *Funck*, 4 Den., 110 ; *Dart* v. *Ensign*, 47 N. Y., 619.) Defendant, as appeared by the bill of lading and the order of delivery, was only an agent for T. L. Baker, and as such was not liable for the freight. (*Davis*

v. *Pattison*, 24 N. Y., 320 ; . *Dàrt* v. *Ensign*, 47 id., 619, 623 ; *Amos* v. *Temperly*, 8 M. & W., 798 ; *Grove* v. *Brien*, 8 How. [U. S.], 429 ; *Miner* v. *Nor. R. Co.*, 32 Conn., 91 ; Abb. on Ship., 546 [marg. page, 422], 335 ; 1 Pars. on Ship., 208 [ed. 1869] ; Chit. on Car., 298 [marg. page, 209] ; *Ward* v. *Felton*, 1 East, 507 ; *Collins* v. *U. Tr. Co.*, 10 Watts, 384 ; 1 Pars. M. Law, 220 ; Ang. on Car., 506 ; Story on Ag., 345, 395 ; 12 Petersdorf Ab., 14 ; *Evans* v. *Matlett*, 1 Ld. Ray., 271 ; 12 Mod., 156 ; *Sargent* v. *Morris*, 3 B. & Ald., 277 ; *Lawrence* v. *Minturn*, 17 How. [U. S.], 100 ; *Darnoll* v. *Morehouse*, 45 N. Y., 64 ; *Herman* v. *Estoppel*, 461 ; *Merian* v. *Funck*, 4 Den., 114.) The trial in the court below was a mistrial. (*Purchase* v. *Matteson*, 25 N. Y., 211, 213 ; *Stevens* v. *Hauser*, 39 id., 302, 312 ; *Sackett* v. *Spencer*, 29 Barb., 180, 187 ; Code, § 265.)

*A. Perry* for the respondents. Defendant was the consignee of the wheat : and having received it under a bill of lading, making payment of freight a condition of delivery, became liable to plaintiffs for the payment of such freight. (Bouv. L. D., " Consignee ; " *Cock* v. *Taylor*, 13 East, 399 ; *Shepard* v. *De Bernales*, id., 508 ; *Barker* v. *Havens*, 17 J. R., 234 ; *Dougal* v. *Kemble*, 3 Bing., 383 ; *Price* v. *Powell*, 3 Comst., 422 ; Story on Ag., § 274, and note 2, pp. 269–274 ; Abb. on Ship., 421 ; 3 Kent's Com., 221 ; 1 Pars. M. Law, 219 ; *Merian* v. *Funck*, 4 Den., 110 ; *Hinsdell* v. *Weed*, 5 id., 172 ; *Canfield* v. *N. R. R. Co.*, 18 Barb., 586 ; *Davis* v. *Pattison*, 24 N. Y., 317 ; *Morse* v. *Pesant*, 2 Keyes, 16 ; *Merrick* v. *Gordon*, 20 N. Y., 93 ; *Sanders* v. *Vanzeller*, 4 A. & E., 260 ; *Dows* v. *Green*, 16 Barb., 77 ; 32 id., 490 ; *Gilson* v. *Madden*, 1 Lans., 172 ; *Dart* v. *Ensign*, 2 id., 383 ; S. C., 47 N. Y., 619 ; *Fitzhugh* v. *Wyman*, 5 Seld., 552 ; *Griffith* v. *Ingledew*, 6 S. & R., 429 ; *Minor* v. *N. and W. R. R. Co.*, 32 Conn., 91.) The receipt of the checks of Smith & Co. did not operate as a satisfaction of the plaintiffs' claim for freight. (*Porter* v. *Talcott*, 1 Cow., 359 ; *Rathbone* v. *Tucker*, 15 Wend., 498 ; 18 id., 175 ; *Muldon* v. *Whitlock*, 1

Cow., 290; *Davis* v. *Allen*, 3 Comst., 168; *Cole* v. *Sackett*,
1 Hill, 516; *Haydell* v. *Luer*, 5 id., 448; *Jobbitt* v. *Goundry*,
29 Barb., 509; *Olcott* v. *Rathbone*, 5 Wend., 490; *Gibson* v.
*Toby*, 53 Barb., 191; *Vail* v. *Foster*, 5 Comst., 312; *Darnell*
v. *Morehouse*, 36 How. Pr., 511; *Noel* v. *Murray*, 2 Kern.,
167; *Youngs* v. *Stahelin*, 34 N. Y., 258; *Bradford* v. *Fox*,
38 id., 289.)

EARL, C.    That the consignee, who receives the cargo con-
signed under such a bill of lading as the one in question, is
liable to the carrier for the freight is not questioned. (*Merian*
v. *Funck*, 4 Denio, 110; *Hinsdell* v. *Weed*, 5 id., 172;
*Davis* v. *Pattison*, 24 N. Y., 317; *Morse* v. *Pesant*, 2
Keyes, 16; *Merrick* v. *Gordon*, 20 N. Y., 93.) It matters
not under such a bill of lading, whether the consignee be the
owner or not; the law implies a promise on his part to pay
the freight. But in this case, the fact that the defendant was
merely the agent of the Milwaukee bank was not disclosed
upon the shipping bill, and was unknown to the plaintiffs.
It was found by the General Term, that " neither the master,
nor owners of the schooner, had any knowledge or notice of
the manner in which the wheat was purchased, or of the
drawing, or the non-payment of the draft, or of · the instruc-
tions given by the Milwaukee National Bank to the defendant."
The defendant cannot therefore claim exemption from liability
to the plaintiffs on the ground that it was merely the agent
of another party. The form of the bill of lading addressed
" Account T. L. Baker, to the City Bank, Oswego, N. Y.,"
is such as to show that the defendant was the consignee. It
has been so held in a number of similiar cases. (*Dows* v.
*Greene*, 16 Barb., 77; S. C., 32 id., 490; *Gilson* v. *Madden*,
1 Lans., 172; *Hinsdell* v. *Weed*, 5 Denio, 172; *Canfield* v.
*The Northern Railroad Co.*, 18 Barb., 586; *Dart* v. *Ensign*,
47 N. Y., 619.)

It, therefore, only remains to be examined, whether anything
was done at the time of the delivery of the wheat, or subse-
quently thereto, by which the defendant was discharged from

a liability, which would otherwise rest upon it. The bill of lading provided that the cargo was to be delivered as "addressed on the margin, or to his, or their assignees or consignees upon paying the freight," etc. If the defendant, having no interest as owner in the wheat, had simply assigned the bill of lading, and directed a delivery to the assignee, or given an order for its delivery to the owner without accepting or receiving the wheat, it would not have been liable for the freight. (*Merian* v. *Funck*, 4 Denio, 110; *Dart* v. *Ensign*, 47 N. Y., 619; Chitty on Carriers, 209.) But this the defendant did not do. It accepted the wheat, by directing it to be delivered to the elevator, subject to its order. The wheat after such delivery, remained under its control, and it had all the possession it could take, or be expected to have. The defendant was not, therefore, discharged from its liability to pay the freight by the order for a delivery to the elevator.

At the time the order was given, the cashier of defendant also said to the master of the vessel that "they (meaning the proprietors of the elevator), will pay your freight." This was an assurance that they would pay the freight, which the defendant had by its acceptance of the wheat, become liable to pay. The master was not bound to look to them for the payment of his freight. He was not directed to collect his freight before he made delivery, or to insist upon payment as a condition of delivery. He had the right to make delivery and then immediately call upon the bank for his freight, and was not bound to make any efforts to collect it elsewhere. The proprietors of the elevator paid a portion of the freight and gave their checks on a New York bank for the balance. There was no agreement that these checks should be taken as payment, and they did not, therefore, for an instant, operate as payment. The master could, therefore, immediately have tendered them back, and demanded payment of the balance of the freight. They could not operate as payment, unless paid, and there is no claim that after the master received the checks, there was a want of due diligence in presenting them for payment, or in giving notice of non-payment, and there is

no claim that after the receipt of the checks there was any laches on the part of the plaintiffs, which caused any damage to the drawers thereof or to the defendant. Hence, I am unable to see how the taking of the checks deprived the plaintiffs of any rights which they had against the defendant. The bank had made the proprietors of the elevator their agents, to receive and hold the wheat for them, and also to pay the freight, and the loss following from the conduct of such agents should fall upon it rather than upon the plaintiffs.

The judgment should therefore be affirmed, with costs.

All concur.

Judgment affirmed.