ERIE RAILROAD COMPANY, Respondent, *v.* H. ROSENSTEIN, INC., Appellant.

(Argued October 10, 1928; decided November 20, 1928.)

*Isaac N. Jacobson* for appellant. One who receives goods solely as an agent for sale, does not thereby render himself liable for the freight charges unless he was the consignor, or consignee, or beneficial owner, or expressly promised to pay the freight. (*N. Y. C. & H. R. R. R. Co.* v. *York & Whitney Co.*, 230 Mass. 206; 256 U. S. 406; *N. Y. C. R. R. Co.* v. *Ross Lumber Co.*, 234 N. Y. 261; *Penn. R. R. Co.* v. *Titus*, 156 App. Div. 830; 216 N. Y. 17; *Pitts., C., C. & St. L. Ry. Co.* v. *Fink*, 250 U. S. 577; *Davison* v. *City Bank*, 57 N. Y. 81; *Farrar* v. *Perkins*, 122 Kans. 141; *Elwell* v. *Skiddy*, 77 N. Y. 282; *Union Pacific Railroad Co.* v. *Stickel Lumber Co.*, 99 Neb. 564.)

*Theodore Kiendl* and *A. Sylvester Edmonds* for respondent. Under the Interstate Commerce Act the obligation cf the appellant to pay the unpaid balance of the full amount of the lawful transportation charges accruing under the duly published and filed tariffs is clear. (*Texas & P. R. Co.* v. *Mugg*, 202 U. S. 242; *Texas & P. R. Co.* v. *Abilene Cotton Co.*, 204 U. S. 426; *Chicago & A. R. Co.* v. *Kirby*, 225 U. S. 155; *Kansas City So. Ry. Co.* v. *Carl*, 227 U. S. 639; *Boston & Maine R. Co.* v. *Hooker*, 233 U. S. 97; *Southern Ry. Co.* v. *Prescott*, 240 U. S. 632; *Pittsburgh, etc., Ry. Co.* v. *Fink*, 250 U. S. 577; *Dayton Coal & Iron Co.* v. *Cincinnati, etc., Ry. Co.*, 239 U. S. 446; *Louisville & Nashville R. Co.* v. *Maxwell*, 237 U. S. 94; *Armour Packing Co.* v. *U. S.*, 209 U. S. 56.)

CRANE, J. On April 17, 1923, at Grandfield, Oklahoma, Oklahoma Hide & Produce Co. delivered to Wichita Falls & North Western Railway Co. a carload of live poultry consigned to itself, Oklahoma Hide & Produce Co., New York, N. Y., to be transported by the said

railroad and connecting carriers, including the plaintiff, the Erie Railroad Co. The bill of lading, known as a straight bill of lading, contained the following provision: " The owner or consignee shall pay the freight and all other lawful charges accruing on said property." During the course of transportation in interstate commerce, the Oklahoma Hide & Produce Co. ordered the car of live poultry to be delivered to H. Rosenstein, Inc., the defendant. Delivery was made and accepted by the defendant on May 1, 1923, the defendant paying to the plaintiff the freight and other lawful charges on the car then demanded by the plaintiff. Subsequently, it was found that $52.20 more should have been collected in accordance with the published tariffs.

The consignor was also the consignee. It shipped goods to be delivered to itself. While the poultry was in transit, the consignor-consignee directed delivery to another corporation, H. Rosenstein, Inc. No information was given to the railroad company as to who H. Rosenstein, Inc., was, whether it was the owner or agent. The railroad company, acting upon orders from both the consignor and the consignee, delivered the goods as directed. The party receiving the goods acted in the same way as any owner would act. It received the car of poultry and paid to the plaintiff " freight and all other lawful charges " on the car. It subsequently developed that the defendant was a commission merchant which had received the poultry for the owner, sold it, and remitted the proceeds to the consignor-consignee, less commissions and freight charges. The defendant, however, did not notify the railroad of these facts, gave no notice that it acted as agent or commission merchant, and was not the owner of the poultry. The plaintiff had no knowledge of these facts until after the delivery and the discovery of the undercharge. The defendant in thus silently receiving delivery under orders from the consignor-consignee, undertook to pay all the *lawful*

charges due upon the shipment. It paid less. The railroad company could not accept less. It has brought this action to recover the balance of the freight, $52.20. The defendant resists payment upon the plea that as it was not the owner in fact, only an agent, it is not liable for this amount.

Whether it were owner or agent depended upon veiled facts; an understanding between the receiver and the shipper. If H. Rosenstein, Inc., had been the owner instead of the agent, the transaction would have had exactly the same aspect and coloring and have taken the same form so far as the railroad company was concerned. How could it possibly tell the capacity in which H. Rosenstein, Inc., acted? That company alone knew, and did not tell. If the Oklahoma Hide & Produce Co. consigning the goods to itself, apparently for sale in the New York market, had sold the carload of poultry to H. Rosenstein, Inc., and had given the same instructions to the railroad company, that is, to deliver the goods to that company, the railroad company would have acted no differently than it did in this case and would have had no more knowledge. Yet under such circumstances it is conceded that H. Rosenstein, Inc., would be liable. The liability, it is said, would depend upon its being owner in fact. If it should turn out not to be owner in fact, but only in appearance, then it would not be liable for the freight. Under the Uniform Sales Act, now adopted in most of the States, the ownership of goods depends upon many uncertain elements. When title passes has become almost a mystery. In some cases it is uncertain until the final court having jurisdiction has spoken. Does liability for freight charges depend upon such uncertain ground? The railroad carrier charged with a duty of collecting freight rates fixed by law, and not permitted under any circumstances which might show partiality or favoritism, to vary those rates, should not be compelled to hunt around to find out who is the real

owner of goods. (*Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Fink*, 250 U. S. 577.) It is justified in acting upon appearances and the action of the parties. The consequences should fall upon the one who could easily make clear the situation and has failed to do so. The Interstate Commerce Act deals with practical matters of daily application. As far as possible it should be simplified; at least not rendered unnecessarily intricate. The number of daily shipments by railroad is enormous. Litigation involving the collection of rates indicates that the exact amount of freight charges cannot always be ascertained at the time of delivery. An audit or re-audit is required to determine the right figure. Is the railroad company under such circumstances expected to collect part of the charges from the receiver of the goods and the balance from the shipper, when it had no knowledge of their relationship? If it has knowledge that the person to whom it delivers is not the owner, this is another matter, but where it is called upon to deliver, as in this case, to one who acts *as an owner would act* without divulging an agency, the railroad company is justified, in my judgment, in treating him as consignee or as the owner.

It is further conceded that under the cases, a consignee will be liable for the freight even though he be an agent in fact — if the agency be not known to the railroad. Liability is not dependent upon the use of the word " consignee." One may be liable for the freight rates though not named in the bill as consignee.

The situation presented by this case was evidently foreseen by the amendment to the Interstate Commerce Act, the statute of March 4, 1927, chapter 510, section 1, which reads in part as follows: " Where carriers by railroad are instructed by a shipper or consignor to deliver property transported by such carriers to a consignee other than the shipper or consignor, such consignee shall not be legally liable for transportation charges in respect of the transportation of such property * * *

which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and has no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title," etc. While this amendment is not applicable to the facts of this case, yet it recognizes that consignees were liable where the railroad company was ignorant of the lack of ownership. They are liable now unless the proper notice is given.

I see no reason why H. Rosenstein, Inc., was not a consignee within this interpretation of the law. The shipper was himself the first consignee. It directed delivery to another party. (Hutchinson on Carriers, sec. 193; *Blanchard* v. *Page*, 8 Gray [Mass.], 281.) There was a straight bill of lading. It made no difference whether H. Rosenstein, Inc.'s, name appeared in the bill or not. Delivery was not dependent upon the production of the bill of lading. By reason of the delivery order H. Rosenstein, Inc., became the consignee, and became liable for the freight charges as though in name consignee. Even under the amended statute it would be liable for the freight charges, as it failed to give notice therein required.

Such, I think, is the result we reach after consulting the cases upon this point. The latest is *Louisville & Nashville Railroad Co.* v. *Central Iron & Coal Co.* (265 U. S. 59). The facts are that the Central Iron & Coal Co. sold Tutwiler & Brooks ten carloads of coke to be delivered at the seller's plant in Holt, Alabama. Before delivery, the purchaser sold the coke to the Great Western Smelters Corp. of Mayer, Arizona. Under instructions from Tutwiler & Brooks, the Central Co. delivered the cars of coke to the Louisville & Nashville Railroad, directing shipment to Mayer, Arizona. The bills of lading were delivered to Tutwiler & Brooks, which were sent forward with drafts. Upon payment of the drafts, the surrender of the bills of lading and the payment of the

freight charges, the Smelters Corp. got the coke. There was a balance due of freight charges and demand made upon the Central Co. for the amount. The bills of lading stated that the coke was " consigned to the order of Tutwiler & Brooks, destination, Mayer, Arizona * * * Notify Great Western Smelters Corporation." As in this case, the bill of lading contained the provision: " The owner or consignee shall pay the freight, and average, if any, * * * before delivery." Here we have a bill of lading with Tutwiler & Brooks the consignee and directions to notify the Smelters Corp. The court held that the shipper was not liable for the freight under all circumstances; there might be a contract placing liability for the freight elsewhere. The contract was to be gathered from the bills of lading and the circumstances known to the carrier. The Central Co. in this case did not assume the primary obligation to pay the freight charges. The court said: " It is urged that, if the Central Company was not under a primary obligation to pay the freight charges, it was secondarily liable, because collection from the Smelters Corporation of the balance remaining due had become impossible before the undercharge was discovered. But the trial judge was not compelled so to find. There was evidence that such collection had not become impossible. Confessedly no effort was made to collect from it. Nor was any effort made to collect from Tutwiler & Brooks. Moreover, if a secondary obligation of the Central Company was to be implied from the fact of its causing the coke to be received for transportation, the promise was not necessarily one to pay at any time any freight charges which the carrier might find it impossible to collect from the consignee or his assign. The court might have concluded that it guaranteed merely that the consignee or his assign would accept the shipment. For, under the rule of the *Fink* case, if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether

they are demanded at the time of delivery, or not until later. His liability satisfies the requirements of the Interstate Commerce Act."

Applying this decision to the facts of the case before us, we have the H. Rosenstein, Inc., in the same position as the Smelters Co. in the *Louisville* case. The Smelters Co. was the " *notify* party; " Tutwiler & Brooks the " consignee." Here the consignor was also the consignee and H. Rosenstein, Inc., the notify party or the party to whom the railroad was notified to deliver the goods. It was the " assignee " in this respect of the consignee. If the Smelter Co. would have been liable for the balance of the freight charges in the one case, H. Rosenstein, Inc., should be liable in the other.

To the same effect is the case of *New York Central & Hudson River Railroad Co.* v. *York & Whitney Co.* (256 U. S. 406). Cars were originally waybilled to Chicago, and the consignee was O. E. Spooner, destination, Boston, Mass. At the request of the shipper, the railroad at Chicago made the defendant consignee of all the cars, and wrote Boston in place of Chicago on the waybills. York & Whitney Co. were commission merchants. The suit was over the balance due for freight charges on nine carloads of melons. York & Whitney Co. accepted the cars, paid the charges, and remitted the balance after sale of the goods to the owners. As in the case before us, York & Whitney Co. refused to pay the balance found due after an audit of the charges. The court said: " We think the doctrine announced in *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Fink* (*supra*), is controlling, and that the liability of York & Whitney Company was a question of law. The transaction between the parties amounted to an assumption by the consignee to pay the only lawful rate it had the right to pay or the carrier the right to charge. The consignee could not escape the liability imposed by law through any contract with the carrier." (See, also, *Pittsburgh, Cincinnati, Chicago & St.*

*Louis Ry. Co.* v. *Fink, supra; Dare* v. *N. Y. Central R. R. Co.*, 20 Fed. Rep. [2d] p. 379.)

In this court we have *N. Y. C. R. R. Co.* v. *Ross Lumber Co.* (234 N. Y. 261). Ross Lumber Co. was named as consignee in a bill of lading, but had given directions for delivery to Schieck-Johnson Co. upon payment of the freight charges. The railroad delivered without collecting freight charges and sued Ross Lumber Co. for the amount thereof. This court held the company liable not alone because it was named as consignee but for its acts as consignee, and said: "But the consignee may also become liable for such charges by its own act. While no contractual relation arises between carrier and consignee by the mere designation of the latter as consignee, the consignee becomes liable for the freight charges when an obligation arises on his part from presumptive ownership, acceptance of the goods and the services rendered and the benefits conferred by the plaintiff for such charges."

There is, therefore, no finality in the use of the word "consignee." When the consignor-consignee has given directions to deliver goods to a third party, that party may be liable for the freight rates, although not named in the bill of lading. If the goods have been shipped under a straight bill of lading, the "consignee" named therein or the "notify party," or the "delivery party" may never see the bill of lading. It is not necessary to produce it in order to get the goods. A shipment under such a bill of lading with directions from the named consignee and also the consignor to deliver the goods to another named party who receives the goods and undertakes the payment of the lawful rate charges for those goods makes him liable for the balance of the charges, just as though he were a consignee named in the bill. He is an assignee or a notify party, but whatever we may call him, he exercises the same authority over the goods so far as the carrier is concerned as would an owner. Under such circumstances, lacking any other information,

the railroad company is justified in treating him as owner. *New York Central R. R. Co.* v. *Federal Sugar Refining Co.* (235 N. Y. 182) has little or no bearing upon the case.

For these reasons the judgment appealed from should be affirmed, with costs.

LEHMAN, J. (dissenting). An owner of poultry in Oklahoma consigned its own property to itself in New York. While the goods were in transit it directed delivery of its property to this defendant. The defendant was a commission merchant and did not own the poultry. The real owner clothed the defendant with no appearance of title. It did not transfer to the defendant the bill of lading. The owner's direction to deliver was merely the exercise of dominion over his own property.

The railroad company delivered the poultry to the defendant. The defendant paid the transportation charges, then demanded, and accepted delivery of the poultry. After defendant sold the poultry and accounted to the owner for the proceeds, the railroad company discovered that through error on its part it had failed to demand the full lawful charges before it delivered the goods. The defendant has been held liable for the unpaid charges.

At common law the defendant would not have been liable for the unpaid charges. (*Elwell* v. *Skiddy*, 77 N. Y. 282, 289; *Dart* v. *Ensign*, 47 N. Y. 619; *Davison* v. *City Bank*, 57 N. Y. 81.) The bill of lading provides that " the owner or consignee shall pay the freight and all other lawful charges accruing on said property." Such provision becomes binding upon the owner or consignee who adopts the provision of the contract of carriage by accepting delivery of the goods and the benefit of the carriage. (*Merian* v. *Funck*, 4 Den. 110; *Hinsdell* v. *Weed*, 5 Den. 172, 178; *Davison* v. *City Bank*, *supra*, 86; *Penn. R. R. Co.* v. *Titus*, 216 N. Y. 17.) Here the defendant was not, however, the owner, nor was he the consignee named in the bill of lading.

Under the United States statutes regulating interstate commerce, the liability of a consignee for the payment of freight charges rests upon a broader basis than at common law. (*Pittsburgh, etc., Ry. Co.* v. *Fink,* 250 U. S. 577.) Until the recent amendment of the Interstate Commerce Act (Statute of March 4, 1927, chapter 510, sec. 1), even though the carrier had notice that the consignee was in fact only the agent of the owner, yet acceptance of the goods " amounted to an assumption by the consignee to pay the only lawful rate it had the right to pay or the carrier the right to charge." (*New York Central & Hudson River Railroad Co.* v. *York & Whitney Co.,* 256 U. S. 406.) The question still remains whether the defendant is a " consignee " within the meaning of the Interstate Commerce Act, or the decisions of the Supreme Court defining liability thereunder.

In *New York Central & Hudson River Railroad Company* v. *York & Whitney Co. (supra)* the defendant who by accepting the goods " assumed " the obligation to pay all lawful charges was, it is true, not named as consignee under the bill of lading, which constituted the original contract of carriage. The defendant was, however, thereafter named as consignee by the shipper and the waybills were so marked. The original bill of lading then was superseded. If the original consignee had any rights to the goods, the railroad company no longer recognized them. The carrier agreed with the shipper to transport the goods to the defendant named as consignee in the waybills. The defendant could demand and receive delivery of the goods under the terms of the contract of carriage. The defendant's rights there flowed directly from the carrier's contract to transport the goods to it. They were in no sense different from what they would have been if the defendant had been named as consignee in the original contract. When the defendant received delivery of the goods under the carrier's contract, it adopted the terms of the contract.

There was no room for distinction between the defendant in that case and a consignee named as such in a bill of lading, and the court was not even urged by counsel to attempt such a distinction.

Here the facts are different. Under the contract of carriage the consignor maintained full dominion over the goods. The defendant obtained no rights under that contract and asserted none. The owner exercising the dominion with which it had never parted directed delivery to the defendant. The defendant was not the apparent owner. Its position was equivocal, and at least as consistent with the view that in accepting delivery it was acting merely as agent for the owner as that it was the owner itself. To obtain the release of the carrier's lien, the defendant paid the charges demanded. The owner or consignee under the bill of lading still remained liable for any lawful charges not demanded at that time. (*New York Central R. R. Co.* v. *Ross Lumber Co.*, 234 N. Y. 261.) The owner or consignee, until the moment of delivery to this defendant, might have exercised its right of dominion by changing the direction to deliver to the defendant. The rights of the defendant were derived from and subordinate to the rights of the consignee named in the contract, and the analogy between them seems to me illusory. The consignee receiving the goods under a right created by the contract of carriage must be held to assume all the obligations of the contract of the carriage from which his rights are derived. The defendant, acting in equivocal or undisclosed capacity and receiving the goods solely by the direction to deliver of the person who had reserved dominion over the goods, assumes no personal obligation under the contract of carriage when in fact he acted only as agent for the owner or consignee.

Pound, Andrews and O'Brien, JJ., concur with Crane, J.; Cardozo, Ch. J., concurs in result; Lehman, J., dissents in opinion in which Kellogg, J., concurs.

Judgment affirmed.